**Civil Court of the City of New York**
**County of Bronx  Part _____**

Index Number: CV-002890-05/BX

1511 SHERIDAN LLC
                    -against-
JOSE CRESPO AKA JOSE L CRESPO

**ORDER TO SHOW CAUSE**
To restore case to the calendar, and vacate any
judgment, liens and income executions on this
defendant on this defendant,
allow answer of dismissing the action

**UPON** the annexed affidavit of JOSE CRESPO, sworn to on November 4, 2021, and upon all papers and proceedings
herein:

    Let the Plaintiff(s) or Plaintiff(s) attorney(s) show cause at: **You must attend this appearance virtually.**
Virtually attend by: Microsoft Teams meeting Link: https://notify.nycourts.gov/meet/0kp787
Conference Call #: (347) 378-4143
Toll-free #: (833) 262-7886
Conference ID: 186 621 547
For instructions, go to https://nycourts.gov/appear
            Bronx Civil Court
            **851 Grand Concourse**
            **Bronx, NY 10451**
            **Part** 34W **Room** 503
            **on** Nov. 17, 2021 **at  9:30 AM**
or as soon thereafter as counsel may be heard, why an order should not be made:

1. restoring the case to the calendar
2. vacating the Judgment, and all liens, income executions and restraining notices,
3. accepting the proposed answer as filed or allowing defendant to file an answer and/or
4. dismissing the action if warranted, and/or
5. granting such and further relief as may be just.

**PENDING** the hearing of this Order to Show Cause and the entry of an Order thereon, let ALL proceedings on the
part of the Plaintiff(s), Plaintiff(s) attorney(s) and agent(s) and any Marshal or Sheriff of the City of New York for
the enforcement of said Judgment be stayed (stopped).

Check only if applicable:
☑**PLAINTIFF** shall provide a copy of the summons and complaint and affidavit of service to the defendant on the
return date of this Order to Show Cause.
**SERVICE** of a copy of this Order to Show Cause, and attached Affidavit in Support, shall be made on the
(check all that apply):
    ☑ Claimant(s)/Plaintiff(s) or named attorney(s)          ☐ Sheriff or Marshal

| | |
|---|---|
| ☑ by Personal Service by " In Hand Delivery"  OR | ☐ by Personal Service by " In Hand Delivery" |
| ☑ by Certified Mail, Return Receipt Requested  OR | ☐ by Certified Mail, Return Receipt Requested |
| ☑ by First Class Mail with official Post Office Certificate of Mailing | ☐ by First Class Mail with official Post Office Certificate of Mailing |

on or before  11 | 10 | 20 21 _____ , shall be deemed good and sufficient service.

**PROOF OF SUCH SERVICE** must be filed with the Clerk in the Part indicated above on the return date of this Order
to Show Cause.
**Mail to Attorney or party**:                                    **Sheriff/Marshal:**
Gutman Mintz Baker & Sonnenfeld PC (Counsel for Pltf), at 813
Jericho Turnpike, New Hyde Park, NY 11040-4608

        November 4, 2021
_____                          _____
            DATE                            Emily Morales-Minerva
                                    Hon. Connie Morales, Civil Court Judge (NYC)
                                    Hon. Emily Morales-Minerva, J.C.C.

UCS-CC-2

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF BRONX
-------------------------------------------------------------X

1511 SHERIDAN LLC,

                    INDEX NO. CV-002890-05/BX

               Plaintiff,

     -against-                   AFFIDAVIT IN SUPPORT OF
                                    DEFENDANT'S ORDER TO

JOSE L CRESPO,                  SHOW CAUSE[*]

               Defendant *pro se*.
-------------------------------------------------------------X
STATE OF NEW YORK, COUNTY OF BRONX   SS:

     JOSE L CRESPO, being duly sworn, deposes and says:

1.  I am the defendant *pro se* in this action. I have been homeless since June 2020, and am using the mailing address of REDACTED. I am 50 years old and have multiple health issues, including diabetes, congestive heart failure (including a prior heart attack, which led to quadruple bypass surgery), and asthma. My only source of income is public assistance.

2.  I submit this affidavit in support of my Order to Show Cause to vacate the default judgment, lift all restraints and executions, order restitution, with interest, of all levied and/or garnished funds, and dismiss this case for lack of personal jurisdiction or, in the alternative, deem the attached Proposed Answer timely served and filed, and grant such other and further relief as may be just and proper.

3.  The Court should grant my Order to Show Cause because:

    a.  I was never served with the Summons and Complaint. According to Plaintiff's Affidavit of Service, Plaintiff's process server served a copy of the Summons and Complaint at an address at which I have never lived. The Court therefore lacks personal jurisdiction over me, and should vacate the default judgment under CPLR 5015(a)(4) and dismiss this case. Also, since Plaintiff's process server claims to have served the Summons and Complaint ten days before Plaintiff

---

[*] This document was prepared with the assistance of attorneys at New Economy Project, 121 West 27th Street, Suite 804, New York, NY 10001, (212) 680-5100. New Economy Project operates the NYC Financial Justice Hotline, which provides free limited-scope legal assistance to low-income New York City residents.

commenced this action, then Plaintiff's Affidavit of Service is either invalid on its face; Plaintiff's process server allegedly served a defective Summons that did not bear any index number or date of filing with the Court, as required by CPLR 305(a); or Plaintiff served a Summons and Complaint for a different, undetermined action.

b. I have both a reasonable excuse for defaulting—that I was never served with the Summons and Complaint—and numerous meritorious defenses, including that I withheld my rent from Plaintiff because Plaintiff failed to make critical court-ordered repairs to my apartment. If the Court finds that Plaintiff's service was proper, the Court should therefore vacate the judgment under CPLR 5015(a)(1) and deem my Proposed Answer timely served and filed.

c. If the Court agrees to vacate the judgment, I am entitled to restitution of the funds that Plaintiff previously garnished from my wages, in the amount of $1,458.30, plus interest.

4. Plaintiff commenced this lawsuit on or about January 21, 2005, by filing a Summons and Complaint. A copy of the Summons and Complaint is attached as **Exhibit A**.

5. I was never served with a copy of the Summons and Complaint. Instead, I first learned of this lawsuit and the default judgment at around the end of December 2018, when I received an income execution from the Erie County Sheriff's Office saying my wages would be garnished.

6. When I received this income execution, I was living in Buffalo, NY, attending Buffalo State College full-time and working 20-30 hours a week to support myself.

7. I recognized Plaintiff's name on the income execution. In the early 2000s, I took Plaintiff, my former landlord, to housing court because Plaintiff would not repair my ceiling, big chunks of which had fallen off because of a leak in the apartment above. As I recall, a housing court judge ordered Plaintiff to make the necessary repairs, but Plaintiff repeatedly failed to show up to my apartment on the dates scheduled by the judge over the course of multiple court appearances. Because of Plaintiff's repeated no-shows and failure to make repairs, I began withholding my rent from Plaintiff, and was finally forced by the apartment's condition to leave the apartment.

8. After I received the income execution, I called the housing court clerk's office to ask if there was a judgment against me. The clerk said no, but said there was a non-housing Civil Court judgment against me. The clerk told me how to request that court file, and my sister, who was living in New York City, went and obtained copies. When I saw the court

file, I realized that Plaintiff must have sued me for the rent I had withheld because of Plaintiff's failure to make the court-ordered repairs to my old apartment.

9. I had already missed a few weeks of school when I had to have quadruple bypass surgery. I could not afford to take more time off from school or from my part-time job in Buffalo to travel to New York City in order to challenge the default judgment and garnishment. Nor could I afford to hire an attorney to represent me.

10. Then, in around November 2019, I lost my job in Buffalo. For a few months, I tried unsuccessfully to find another job in Buffalo. Around the beginning of March 2020, I moved back to my hometown of New York City because my unemployment benefits application had not yet been approved and I could no longer afford my rent. At first I stayed with my sister, but in June 2020 she lost her apartment and had to move into my mother's one-bedroom apartment, where two other relatives also reside. Because my mother's apartment was overcrowded, I became homeless, and have been staying with friends here and there. In March 2021, I had to cash out my 401(k).

11. Because of the loss of my job and housing, my multiple health issues, my financial hardship, and concerns about going outside and getting on public transportation during the pandemic, I was unable to challenge the default judgment until Plaintiff restrained my bank account on or around August 30, 2021.

12. On or around August 30, 2021, I learned that Plaintiff had restrained my M&T Bank account, which I understood to contain only my unemployment benefits and COVID-19 stimulus money. I urgently needed this money released so I could pay my bills, which I did through autopay, including for my phone, storage unit, student loans, personal loans (which I had taken out to help cover my college tuition), and credit cards.

13. When I spoke to my bank, a bank employee said they could not give me any information except for the name and phone number of Plaintiff's attorneys.

14. I called Plaintiff's attorneys and said I needed the money in my bank account to pay my bills. I told Plaintiff's attorneys that all the money in my bank account was unemployment benefits and stimulus money. I also told Plaintiff's attorneys that I did not owe any money to Plaintiff because Plaintiff had never made critically-needed repairs to my apartment. Plaintiff's attorneys said I owed the money. Plaintiff's attorneys then said they would call the bank to find out how much money was in my account, see how much money they would be willing to take in order to release my account, and call me back.

15. Plaintiff's attorneys then called me back and said they would be willing to take $1,200 in order to release my account. I had tried to do some quick research online and read that

unemployment benefits and COVID-19 stimulus money are exempt from debt collection. I again told Plaintiff's attorneys that all the money in my bank account was unemployment benefits and stimulus money, and said I had read online that Plaintiff was not entitled to this money. Plaintiff's attorneys said I would still have to pay $1,200 if I wanted my account released.

16. Because of what Plaintiff's attorneys said, I believed I had no choice but to agree to pay the $1,200.

17. Plaintiff's attorneys then emailed me an agreement to pay $1,200 out of the funds in my bank account to Plaintiff to have my account released. I signed this agreement and sent it back to Plaintiff's attorneys about an hour later, on September 2, 2021. I then waited for Plaintiff to release my bank account.

18. For nearly two more months, Plaintiff did not take the $1,200 from my bank account or release my bank account. I checked with my bank multiple times and confirmed that my bank still had not received the agreement from Plaintiff's attorneys. I offered to send the agreement to my bank, but my bank said they needed to receive it directly from Plaintiff's attorneys in order to release my account. I had already spoken to Plaintiff's attorneys several times, which was very stressful for me because they were very aggressive. I did not want to go through that again, so I did not call them again to ask about the agreement.

19. On or around September 12 or 13, 2021, I received documents in the mail from my bank saying I could withdraw $3,600 from my bank account pursuant to New York State law and send a form indicating whether any of the money in my bank account was exempt. I called my bank and said I wanted to fill out the form (which I later realized was called an Exemption Claim Form). The bank employee I spoke to told me that filling out the form would not make any difference, but that I could withdraw the $3,600. The bank employee said that if I withdrew the $3,600, I would forfeit the remaining amount of money in my bank account—about $2,000.

20. I did not want to forfeit the remaining amount of money in my bank account. I also did not want to withdraw the $3,600 because I am currently homeless and do not want to keep that much cash on my person. I therefore decided that I had better not withdraw the $3,600 from my bank account.

21. Because of the restraint on my account, I was unable to pay my monthly bills, including for my phone, storage unit, credit cards, and personal loans, and I have incurred multiple late fees. I had also been applying for jobs, but I could no longer afford to pay for the haircut and shave I would need to get before a job interview; nor could I have afforded

public transportation to get to any job interviews. My mother helps me out with meals when she can, but she also has serious health issues, does not earn much money, and is the primary caretaker for several family members.

22. Because my bank account continued to be restrained, I went to Civil Court to see if there was anything I could do. A clerk said I could file an Order to Show Cause, but recommended that I first contact legal services organizations to try to obtain free legal assistance. The clerk gave me a list of organizations to call. I was then able to reach a free legal assistance hotline, which helped me prepare this Order to Show Cause.

23. Attorneys at the free legal assistance hotline then contacted Plaintiff's attorneys on my behalf, providing an analysis of my bank account, along with supporting documentation, showing that all of the funds in my account at the time of restraint were exempt. On October 28, 2021, Plaintiff's attorneys agreed to release the restraint on my account.

**A.   The Court Lacks Personal Jurisdiction Because Plaintiff Allegedly Served the Summons and Complaint at an Invalid Address**

24. Plaintiff's Affidavit of Service claims that I was served by "nail-and-mail" service at 2:10 p.m. on January 11, 2005, at 1229 Franklin Ave., Apt. BB, Bronx, NY 10456. A copy of Plaintiff's Affidavit of Service is attached as **Exhibit B**.

25. I have never lived at 1229 Franklin Ave., Apt. BB, Bronx, NY 10456. I recognize this address, however, because my mother's ex-boyfriend used to live there, as the building's live-in superintendent. I used to do window repair work with him for various landlords, including Plaintiff. On information and belief, he would receive payment for his work from these various landlords, including Plaintiff, at his 1229 Franklin Ave. address, which meant Plaintiff knew his address. However, neither my mother nor I ever lived at 1229 Franklin Ave.

26. On January 11, 2005, the date of alleged service, I was living at either 523 Fifth Ave., Apt. 284, Pelham, NY 10803 or 2420 Webster Ave., Apt. B3, Bronx, NY 10457. I cannot recall the exact date I moved from the 523 Fifth Ave. address to the 2420 Webster Ave. address. I had been living at the 523 Fifth Ave. address since around 2002 or 2003, after I had to move out of the apartment where Plaintiff was my landlord. I then moved from the 523 Fifth Ave. address to the 2420 Webster Ave. address. After I got married on September 1, 2006, I moved from the 2420 Webster Ave. address to 6 Schley Ave., New Rochelle, NY 10801.

27. Plaintiff's Affidavit of Service also claims that Plaintiff's process server mailed an additional copy of the Summons and Complaint to me at the 1229 Franklin Ave. address

on January 11, 2005 (*see* **Exhibit B**). However, I never received this mailing because I never lived at the 1229 Franklin Ave. address. My mother's ex-boyfriend never told me that he had received any papers for me, by mail or otherwise, and he never gave me any court papers either directly or through my mother. I also recently asked my mother if her ex-boyfriend ever mentioned receiving court papers for me, and she said no.

28. Plaintiff's Affidavit of Service is also suspect because Plaintiff's process server claims to have served the Summons and Complaint before Plaintiff even commenced this action. I understand that an action is commenced under CPLR 304(a) by the filing of a summons and complaint or summons with notice. Plaintiff's process server claims to have served the Summons and Complaint on January 11, 2005 (*see* **Exhibit B**), though Plaintiff did not commence this lawsuit until ten days later, on January 21, 2005 (*see* **Exhibit A**). This discrepancy suggests that either Plaintiff's process server lied about the date of alleged service, in which case the Affidavit of Service should be deemed invalid on its face; allegedly served a Summons and Complaint for an action that had not even commenced and which Summons was therefore defective under CPLR 305(a) for lack of an index number and date of filing; or allegedly served a Summons and Complaint for a different, undetermined action. Plaintiff's Affidavit of Service also lacks any index number and date of filing (*see* **Exhibit B**).

29. The attached records from the New York City Department of Consumer Affairs (now the New York City Department of Consumer and Worker Protection, "Department") show that the process server named in Plaintiff's Affidavit of Service, Ricardo Diaz, was fined $500 and entered into a consent order in 2013 for violations of the Rules of the City of New York. The Amended Notice of Hearing and Consent Order concerning these violations are attached as **Exhibits C** and **D**, respectively.

30. Process server Diaz was charged with failing to attempt to learn the result of traverse hearings scheduled in matters for which he was alleged to have served process, despite having received notice of the hearings, and failing to timely report the result of the hearings or that he attempted to learn the results of the hearings (**Exhibit C ¶¶ 5-14**). For these violations, the Department sought an order imposing the maximum fines, suspending or revoking Diaz's license, and requiring a report of traverse hearings (*id.* at 4).

31. Process server Diaz's history of violating process server rules casts further doubt on the soundness of his affidavits.

32. Because I was never served with the Summons and Complaint, the Court should dismiss the Complaint for lack of personal jurisdiction pursuant to CPLR 5015(a)(4). The following cases support this argument: *Royal Zenith Corp. v Cont'l Ins. Co.*, 63 NY2d

975, 977 (1984) (judgment entered with no basis for personal jurisdiction a nullity) (citing *World-Wide Volkswagen Corp. v Woodson*, 444 US 286, 291 [1980]); *Feinstein v Bergner*, 48 NY2d 234 (1979) (affirming dismissal for improper service and lack of jurisdiction); *MTS Minor Trading, S.A. v Diaz*, 290 AD2d 296 (1st Dept 2002) (same); *McMullen v Arnone*, 79 AD2d 496, 499 (2d Dept 1981) ("[A] judgment entered in the course of the proceedings, even though entered on default, is a nullity and binds no one.").

33. I understand that a motion to vacate a judgment for lack of personal jurisdiction may be made at any time (*see, e.g.*, *Green 333 Corp. v RNL Life Sci., Inc.*, 191 AD3d 506, 506 [1st Dept 2021] ["Absent proper service, a default judgment may be vacated at any time, as it is void."]; *McMullen*, 79 AD2d at 499 [2d Dept 1981] ["The person purportedly served may ignore the judgment, resist it or assert its invalidity at any and all times."]).

34. I further understand that any alleged delay by a defendant in seeking to vacate the default judgment does not waive his personal jurisdiction defense, because the jurisdictional decision of a motion under CPLR 5015(a)(4) is nondiscretionary and should not consider other factors such as delay (*see Forster Grp. Inc APO Citibank v Aezen*, 2021 NY Misc LEXIS 1255, at *1 [NY County Civ Ct Mar 22, 2021] [court must resolve jurisdictional objections under CPLR 5015[a][4] before determining whether it is appropriate to grant discretionary vacatur of default under CPLR 5015[a][1]), *aff'd on reargument*, 2021 NY Misc LEXIS 3552 [NY County Civ Ct June 3, 2021]).

35. Nor did I waive my personal jurisdiction defense when I had my wages involuntarily garnished in 2019. At the time, as stated above, I was living in Buffalo, NY, attending school full-time and working 20-30 hours a week to support myself. I could not afford to take time off from school or from my part-time job to travel to New York City to challenge the default judgment; nor could I afford to hire an attorney to represent me. I returned to New York City only after I lost my job in Buffalo and was no longer able to afford my rent. A few months later, New York City went into lockdown because of the COVID-19 pandemic. For most of the pandemic, I have been homeless and dealing with my multiple health issues, while still trying to stay current on my bills by using my unemployment benefits and stimulus money.

36. I have not demonstrated any bad faith in seeking to vacate the default judgment, and the 2019 wage garnishment cannot be deemed a waiver of my personal jurisdiction defense. The following case supports this argument: *HSBC Bank USA v A&R Trucking Co., Inc.*, 66 AD3d 606, 607 (1st Dept 2009) (defendant did not demonstrate lack of good faith and was not otherwise dilatory in asserting her rights where she learned about judgment only when levy was placed on her bank account, and moved to vacate judgment seven to ten months later, upon learning that plaintiff was seeking to collect again).

37. Similarly, I did not know about the 2005 judgment in this case until more than 13 years after its entry, when I received the sheriff's income execution at around the end of December 2018. At that point, because of my financial circumstances, my full-time schooling, my 20-30/hour-per-week job, and my residence in Buffalo, I was unable to travel to New York City to challenge the judgment or the garnishment. When my bank account was restrained in August 2021 for further collection, I was back in New York City and, despite my difficult personal and financial circumstances, including my homelessness and health issues, have acted as promptly as I could to find free legal assistance and address the default judgment.

38. The Court should also find the agreement I signed authorizing payment to Plaintiff of $1,200 to be void because: a) Plaintiff made fraudulent misrepresentations, through its attorneys, that I would have to pay $1,200 if I wanted my account released, even though I had told them that all the money in my account was exempt unemployment benefits and stimulus money, and that I did not owe Plaintiff any money; b) my extreme economic duress, together with Plaintiff's misrepresentations, left me no choice but to enter the agreement; and c) the agreement goes against public policy that exempt funds be protected from debt collection.

    a. I understand that the essential elements of a fraudulent misrepresentation are "representation of a material existing fact, falsity, *scienter*, deception and injury" (*Channel Master Corp. v Aluminium Ltd. Sales, Inc.*, 4 NY2d 403, 407 [1958]). In misrepresenting that I needed to enter a settlement agreement to gain access to my needed funds, even though the funds are exempt from debt collection and New York law is intended to protect them from restraint, Plaintiff "fraudulently ma[de] a misrepresentation . . . for the purpose of inducing [me] to act or refrain from action in reliance thereon in a business transaction" (*see id.*), and the settlement is voidable.

    b. The agreement is also voidable because I executed it under economic duress (*see Austin Instrument v Loral Corp.*, 29 NY2d 124, 130 [1971] [contract voidable for economic duress when signing party "was forced to agree to it by means of a wrongful threat precluding the exercise of his free will" and duress can be "demonstrated by proof that immediate possession of needful goods is threatened"] [internal quotations omitted]). Plaintiff's representations to me, through its attorneys, that I could not recover my exempt funds, which I needed to pay my bills, unless I entered into an agreement deprived me of my free will and forced me into the agreement.

    c.   The agreement was contrary to public policy that exempt funds be protected from debt collection against a person's will. I understand that contracts that violate public policy are voidable (*159 MP Corp. v Redbridge Bedford, LLC*, 33 NY3d 353, 386 [2019] ["A contract provision that violates public policy . . . cannot be enforceable . . . ."]) and that it is public policy that protected funds are not to be applied to debt collection against a person's will (*see Cruz v TD Bank, N.A.*, 22 NY3d 61, 66 [2013] [stating that federal and state law exempt certain types of funds such as unemployment insurance, "the clear legislative intent is that funds of this nature are not to be subject to debt collection," and "[t]he [Exempt Income Protection Act] was . . . aimed at ensuring that this class of judgment debtors is able to retain access to exempt funds"]).

39. In addition to the above, the Court should also not deem the agreement an acknowledgment of the debt because I explicitly told Plaintiff's attorneys that I did not owe the debt because Plaintiff had failed to make repairs to my apartment.

## B. Alternatively, the Court Should Vacate the Default Judgment Because of My Reasonable Excuse for Defaulting and My Meritorious Defenses

40. Nevertheless, if the Court finds that service was proper, I satisfy the two-pronged test of a reasonable excuse for defaulting and meritorious defense, and the Court should vacate the default judgment under CPLR 5015(a)(1).

41. As discussed above, I was never served with the Summons and Complaint. I understand that without proper service, any default is a nullity (*Chase Manhattan Bank, N.A. v Carlson*, 113 AD2d 734, 735 [2d Dept 1985] ["Absent proper service of a summons, a default judgment is a nullity and once it is shown that proper service was not effected the judgment must be unconditionally vacated."]).

42. As stated above, the first time I learned of any alleged outstanding debt in this case was at around the end of January 2019, when Plaintiff began garnishing my wages. As stated above, at the time I was living in Buffalo, NY, attending school full-time and working 20-30 hours a week to support myself, and I could not afford to hire an attorney or take time off from school and my job to travel to New York City to challenge the default judgment.

43. Now I am back in New York City, and I was recently able to reach a free legal services hotline. I now understand that I have the right to challenge the judgment, including because I never received the Summons and Complaint and because I have meritorious defenses.

44. My meritorious defenses include that:

    a.   I do not owe the debt, including because I was constructively evicted from the premises because of unhealthy and unsafe living conditions;

    b.   I dispute the amount of the debt, including because Plaintiff failed to return or credit me for my security deposit and my last month's rent, which I prepaid upon signing my lease;

    c.   I am owed an abatement because Plaintiff breached the warranty of habitability based on conditions dangerous to my health and safety;

    d.   Plaintiff violated its duty of good faith and fair dealing; and

    e.   For many months, Plaintiff failed to make necessary repairs to replace the large missing parts of my ceiling in my then-studio apartment. While I was living at the subject apartment, there was a leak in the apartment above and big chunks of my ceiling fell off. Plaintiff would not make the necessary repairs to replace those missing parts of my ceiling. I finally had to take Plaintiff to housing court, where I recall that a judge ordered Plaintiff to make repairs and scheduled dates on which Plaintiff would be able to access my apartment ("access dates"). Plaintiff kept failing to show up on the access dates to make the repairs, and so I kept having to go back to court and the court kept scheduling new access dates. Plaintiff also failed to show up on the court dates. This went on for probably eight to ten months. After the second or so court date, I started withholding the rent because of Plaintiff's repeated failure to make the repairs. The last time I went to housing court, the judge asked me what I wanted to do, and I said I did not want to keep waiting for Plaintiff to make repairs, so I would just move out of the apartment. I moved out soon after that, but never got my security deposit or last month's rent prepayment back.

45. I have requested the court file for the housing court case referenced above, and am waiting for the file to become available. As of November 1, 2021, when I last called the housing court clerk, the file was still not available.

46. In addition to my meritorious defenses, I also have a counterclaim against Plaintiff because Plaintiff failed to return my security deposit and last month's rent, which I prepaid upon signing my lease. A copy of my Proposed Answer is attached as **Exhibit E**.

47. I understand that courts have adopted a liberal policy with respect to vacating default judgments, finding that the general policy of the courts is to permit actions to be determined on the merits wherever possible and allowing parties to have their day in court to litigate the issues (*see Cappel v RKO Stanley Warner Theaters, Inc.*, 61 AD2d 936 [1st Dept 1978]). If this Court does not dismiss this proceeding for any of the foregoing reasons, then this Court should vacate the judgment in the interest of justice and permit me to serve and file an answer so that I may have an opportunity to litigate the instant action on the merits, especially since, as stated above, I have numerous meritorious defenses.

## C.  The Court Should Lift Any and All Remaining Restraints and Executions, and Order Restitution, with Interest

48. The Court should order any and all remaining restraints and executions lifted.

49. In addition, the Court should order restitution, with interest, of all the funds Plaintiff previously garnished from my wages, totaling $1,458.30, as well as any funds that Plaintiff may have garnished or levied, pursuant to CPLR 5015(d).

WHEREFORE, I request that the Court vacate the default judgment, lift any and all restraints and executions, order restitution, with interest, of all levied and garnished amounts, and dismiss this case for lack of personal jurisdiction or, in the alternative, deem my Proposed Answer timely filed, restore the case to the calendar, and grant me such other and further relief as may be just and proper.

_____

Jose L Crespo, Defendant *pro se*

REDACTED

(*Mailing address*)

Sworn to before me on the _____
day of November, 2021

_____

Notary Public

# EXHIBIT A

CONSUMER CREDIT TRANSACTION.   THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY
INFORMATION OBTAINED WILL BE USED TO COLLECT THE DEBT

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF   BRONX

---

INDEX NO:
CLAIM NO: 241862

002630

1511 SHERIDAN LLC

PLAINTIFF(S)

-AGAINST-

JOSE CRESPO
A/K/A JOSE L. CRESPO

DEFENDANT(S)

S U M M O N S
THE BASIS OF VENUE DESIGNATED IS
PLAINTIFF'S BUSINESS ADDRESS
1521 SHERIDAN AVENUE
BRONX,  NEW YORK

---

TO THE ABOVE NAMED DEFENDANT(S)
    YOU ARE HEREBY SUMMONED TO APPEAR IN THE CIVIL COURT OF THE CITY OF
NEW YORK COUNTY OF   BRONX         THE OFFICE OF THE CLERK OF THE SAID
COURT AT 851 GRAND CONCOURSE, BRONX, NY 10451 NEW YORK 11201
IN THE COUNTY   BRONX          , CITY AND STATE OF NEW YORK, WITHIN THE TIME
PROVIDED BY LAW AS NOTED BELOW AND TO FILE ANSWER TO THE BELOW COMPLAINT
WITH CLERK: UPON YOUR FAILURE TO ANSWER, JUDGMENT WILL BE TAKEN AGAINST
YOU FOR THE SUM OF    $4578.98    WITH INTEREST THEREON FROM  FEBRUARY 01, 2003
TOGETHER WITH THE COSTS OF THIS ACTION.

DATED:  NOVEMBER 15, 2004

DEFENDANT'S ADDRESS

JOSE CRESPO
1229 FRANKLIN AVENUE
APT BB
BRONX, NY                    10456-3517

BY:  GARY KAVULICH, ESQ.OF COUNSEL
GUTMAN, MINTZ, BAKER & SONNENFELDT, P.C.
ATTORNEYS FOR PLAINTIFF
813 JERIHCO TURNPIKE
NEW HYDE PARK, NEW YORK 11040
(516) 616-0734

NOTE: THE LAW PROVIDES THAT: (A) IF THIS SUMMONS IS SERVED BY ITS DELIVERY TO
YOU PERSONALLY WITHIN THE CITY OF NEW YORK, YOU MUST APPEAR AND ANSWER WITHIN
TWENTY DAYS AFTER SUCH SERVICE; OR (B) IF THIS SUMMONS IS SERVED BY ANY MEANS
OTHER THAN PERSONAL DELIVERY TO YOU WITHIN THE CITY OF NEW YORK OR OUTSIDE THE
CITY OF NEW YORK, YOU MUST APPEAR AND ANSWER WITHIN THIRTY DAYS AFTER PROOF
OF SERVICE THEREOF IS FILED WITH THE CLERK OF THIS COURT.

COMPLAINT

FIRST ACTION:   PLAINTIFF SEEKS TO RECOVER DAMAGES FROM DEFENDANT(S) FOR
BREACH OF A LEASE AGREEMENT AND PURSUANT TO SAID LEASE IS/ARE RESPONSIBLE FOR
RENT IN THE LIQUIDATED SUM OF   $4078.98 REPRESENTING RENT FROM FEBRUARY 01,2003
TO   OCTOBER 31, 2003   AT THE AGREED LEASE SUM OF   $477.00   PER MONTH

| 2/03 BAL | $262.98 | 3/03 | $477.00 | 4/03 | $477.00 |
| 5/03 | $477.00 | 6/03 | $477.00 | 7/03 | $477.00 |
| 8/03 | $477.00 | 9/03 | $477.00 | 10/03 | $477.00 |

(AFTER APPLICATION OF PAYMENT AND SECURITY DEPOSIT) FOR THE PREMISE KNOWN AS
1521 SHERIDAN AVENUE          APT. C33      BRONX,  NEW YORK          10457

SECOND ACTION:   PLAINTIFF ADDITIONALLY SEEKS TO RECOVER DAMAGES PURSUANT TO
SAID LEASE IN THE SUM OF                REPRESENTING COSTS INCURRED AS A RESULT
OF SAID BREACH FOR WHICH TENANT IS RESPONSIBLE: TO WIT: PAINTING AND REPAIRS.

ACTION:   PLAINTIFF SEEKS TO RECOVER DAMAGES IN THE SUM OF        $500.00
ESENTING REASONABLE ATTORNEY'S FEES INCURRED AS A RESULT OF SAID BREACH
SUANT TO THE LEASE AGREEMENT. WHEREFORE, PLAINTIFF DEMANDS JUDGMENT
ON THE FIRST ACTION, IN THE SUM OF     $4078.98   WITH INTEREST FROM
BRUARY 01, 2003    TOGETHER WITH COSTS AND DISBURSEMENTS OF THIS ACTION
SUCH OTHER AND FURTHER RELEIF AS THE COURT MAY DEEM JUST: (B) ON THE
OND ACTION, IN THE SUM OF            WITH INTEREST FROM.  FEBRUARY 01, 2003
ETHER WITH COSTS AND DISBURSEMENTS OF THIS ACTION AND FOR SUCH OTHER AND
THER RELIEF AS THE COURT MAY DEEM JUST: (C) ON THE THIRD ACTION, IN THE
OF     $500.00    WITH INTEREST FROM    FEBRUARY 01, 2003   TOGETHER WITH
TS AND DISBURSEMENTS OF THIS ACTION AND FOR SUCH OTHER AND FURTHER
IEF AS THE COURT MAY DEEM JUST.

# EXHIBIT B

AFFIDAVIT OF SERVICE

Index # _____

Date Filed _____

Court Date _____

Assigned Justice _____

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF __Bronx__

ATTORNEY(S)  Gary Kavulich, Esq. Gutman, Mintz, Baker & Sonnenfeldt, P.C.
ADDRESS   813 Jericho Turnpike, New Hyde Park, NY 11040   File No.: 24/862

1511 Sheridan LLC.   vs   Jose Crespo AKA Jose L. Crespo

Plaintiff(s)/Petitioner(s)

Defendant(s)/Respondent(s)

STATE OF _NEW YORK_   COUNTY OF _NASSAU_   ss

__Ricardo Dion__ , being duly sworn deposes and says

Deponent is not a party herein, is over 18 years of age  On _1.11.05_ at _2:10 p_

at _1229 Franklin Avenue, Bx, NY, 10452, Apt BB_ deponent served the within

__SUMMONS AND COMPLAINT__

with Index Number _____ and Date Filed _____ endorsed thereon,

on __Jose Crespo AKA Jose L. Crespo__   __Defendant__ therein named

INDIVIDUAL ☐ By delivering a true copy of each to said recipient personally, deponent knew the person served to be the person described as said person therein.

CORPORATION ☐ By delivering to and leaving with _____ and that deponent knew the person so served to be Managing Agent of the corporation, and authorized to accept service on behalf of the corporation.

Service was made in the following manner after your deponent was unable, with due diligence, to serve the witness/defendant in person, and an attempt to locate the defendant's place of employment

SUITABLE AGE PERSON ☐ By delivering a true copy of each to _____ a person of suitable age and discretion. Said premises is recipient's [ ] actual place of business [ ] dwelling house (usual place of abode) within the state

AFFIXING TO DOOR ☒ By affixing a true copy of each to the door of said premises which is recipient's [ ] actual place of business [✓] dwelling house (place of abode) within the state

MAIL COPY ☒ On _1.11.05_, deponent completed service under the last two sections by depositing a copy of the __Summons & Complaint__ to the above address in a 1st Class postpaid properly addressed envelope marked 'Personal and Confidential' in an official depository under the exclusive care and custody of the United States Post Office in the State of _N.Y._ Certified Mail No _____

Deponent was unable, with due diligence to find recipient or a person of suitable age and discretion, having called thereat on the _10th_ day of _Jan 2005_ at _8:06 p_
on the _11th_ day of _Jan 2005_ at _10:47 pm_
on the _11th_ day of _Jan 2005_ at _2:10 p_
on the _____ day of _____ at _____

NON SRVC ☐ After due search, careful inquiry and diligent attempts, I have been unable to effect process upon the person/entity being served because of the following [ ] Unknown at Address [ ] Evading [ ] Moved left no forwarding [ ] Address does not exist [ ] Other _____

DESCRIPTION ☐ A description of the Defendant or other person served, or spoken to on behalf of the Defendant is as follows:
Sex _____ Color of skin _____ Color of hair _____ Age _____ Height _____
Weight _____ Other Features _____

WIT FEES ☐ the authorized witness fee and / or traveling expenses were paid (tendered) to the recipient

MILITARY SRVC ☐ Deponent asked person spoken to whether the recipient was presently in military service of the United States Government or of the State of _____ and was informed that recipient was not. Recipient wore ordinary civilian clothes and no military uniform.

OTHER ☐

Sworn to before me on 1/11/05

KILLEEN E. HANLON
Notary Public, State of New York
No. 01HA5087622
Qualified in Queens County
Commission Expires 1-03/05

RICARDO DIAZ   Print Name Below Signature
BRONX, NY
Lic# 1065188

# EXHIBIT

**CITY OF NEW YORK**
**DEPARTMENT OF CONSUMER AFFAIRS**
-----------------------------------------------------------------x
DEPARTMENT OF CONSUMER AFFAIRS

Complainant,

-against-

Ricardo Diaz

Licensee/Respondent.
-----------------------------------------------------------------x

**AMENDED NOTICE OF**
**HEARING**

**LL # 5312954**

**License # 1065188**

**(Process Server Individual)**

In accordance with the powers of the Commissioner of the New York City Department of Consumer Affairs ("the Department") set forth in Section 2203(e) of Chapter 64 of the Charter of the City of New York and Section 20-104 of the Administrative Code of the City of New York ("the Code"), **YOU ARE HEREBY ORDERED TO APPEAR FOR A HEARING AT THE DEPARTMENT'S ADJUDICATION TRIBUNAL AT 66 JOHN STREET, 11TH FLOOR, NEW YORK, NEW YORK AT 9:00 A.M. ON WEDNESDAY, APRIL 24, 2013;**

**AND SHOW CAUSE** why your license to operate as an individual process server should not be suspended or revoked and why monetary penalties should not be imposed on you:

<u>**APPLICABLE LAW**</u>

1. Pursuant to Title 6 of the Rules of the City of New York ("6 RCNY") § 2-236(a), an individual process server must report to the Department, in writing, when a court schedules a hearing to determine whether service of process made by the process server was effective (known as a "traverse hearing") within ten (10) days of receiving notice of the scheduled hearing.

2. Pursuant to 6 RCNY § 2-236(c)(2), an individual process server must report in writing to the Department the result of the traverse hearing (including any judicial order or voluntary settlement resolving the challenge to service of process) within ten (10) days of learning the result.  If the process server is unable to learn the result within ninety (90) days of the scheduled hearing date, the process server must report to the Department, within one hundred (100) days of the scheduled hearing date, that the process server made attempts to learn the result but were unable to do so.

3. Pursuant to 6 RCNY § 2-236(c)(1), individual process servers  must follow specific procedures to attempt to learn the results of traverse hearings.

## FACTS

4. Respondent is licensed by the Department as an individual process server under license number 1065188.

### 1695 Lexington Avenue v. ▮▮▮▮▮▮▮▮▮

5. On information and belief, in or about 2011, process was distributed to Respondent for service in the matter of 1695 Lexington Avenue v. ▮▮▮▮▮▮▮▮ (Index Number 953301/11, New York Housing Court) ("1695 Lexington") and thereafter an affidavit of service executed by Respondent in which he attested that he had served such process in 1695 Lexington was filed with the clerk of the court.

6. The court in 1695 Lexington scheduled a traverse hearing for March 7, 2012 concerning the service of process allegedly made by Respondent.

7. Respondent received notice of the scheduling of the traverse hearing in 1695 Lexington.

8. Respondent did not attempt to learn the result of the traverse hearing in 1695 Lexington in accordance with the procedures specified in 6 RCNY § 2-236(c)(1).

2

9. Respondent did not timely report to the Department the result of the traverse hearing or that Respondent made attempts to learn the result of the traverse hearing and was unable to do so in 1695 Lexington.

**Melrose Site D1 Realty Associates v. ███████**

10. On information and belief, in or about 2011, process was distributed to Respondent for service in the matter of Melrose Site D1 Realty Associates v. ███████ (Index Number 67115/11, Bronx Housing Court) ("Melrose") and thereafter an affidavit of service executed by Respondent in which he attested that he had served such process in Melrose was filed with the clerk of the court.

11. The court in Melrose scheduled a traverse hearing for May 30, 2012 concerning the service of process allegedly made by Respondent.

12. Respondent received notice of the scheduling of the traverse hearing in Melrose.

13. Respondent did not attempt to learn the result of the traverse hearing in Melrose in accordance with the procedures specified in 6 RCNY § 2-236(c)(1).

14. Respondent did not timely report to the Department the result of the traverse hearing or that Respondent made attempts to learn the result of the traverse hearing and was unable to do so in Melrose.

## CHARGES

15. Respondent violated 6 RCNY § 2-236(c)(1) by failing to attempt to learn the results of 2 traverse hearings in accordance with the procedures specified in 6 RCNY § 2-236(c)(1). (2 counts)

16. Respondent violated 6 RCNY § 2-236(c)(2) by failing to, within one hundred (100) days after the scheduled date of 2 traverse hearings, report to the Department either:

(a) the final results of the traverse hearings; or (b) that Respondent made attempts to learn the final results of the traverse hearings but was unable to do so. (2 counts)

**WHEREFORE,** the Department demands that an order issue: 1) imposing maximum fines on Respondent for each and every charge set forth herein; 2) suspending or revoking Respondent's license; 3) ordering Respondent to report to the Department, within 10 days, the results of any traverse hearings cited in this Notice of Hearing that Respondent has not reported to the Department; and 4) granting such other relief as is deemed just and proper.

Dated: April **11** , 2013
New York, New York

For:   **Jonathan Mintz**
       Commissioner

By:

       Senior Staff Attorney
       Legal Division

4

## IMPORTANT INFORMATION FOR RESPONDENTS

**You have been charged with violating Laws and Rules of the New York City Department of Consumer Affairs.**

*FAILURE TO APPEAR AT THE HEARING:* If you do not appear on the scheduled hearing date, a default decision will be issued in which you will be found guilty of the charges and ordered to pay a fine, and your DCA license(s) may be revoked.

*ADJOURNMENTS:* Requests for adjournments must be received at least three (3) business days prior to the hearing date. **You may submit your request by e-mail to adjournmentrequests@dca.nyc.gov (preferred method)**; by fax to 212-361-7766; or by mail to: DCA Administrative Tribunal, 66 John Street, 11th Floor, New York, NY 10038. Make sure to include the violation number in your request. In addition, you must send a copy of your request to aliu@dca.nyc.gov; or by mail to Alvin A. Liu, DCA Legal Division, 42 Broadway, 9th Floor, New York, NY 10004.

*SETTLEMENTS:* If you wish to discuss a possible settlement of the charges in this Notice of Hearing, contact Alvin A. Liu, esq. at aliu@dca.nyc.gov at least five (5) business days prior to the hearing date.

*REPRESENTATION:* Although it is not required, you may choose to bring a lawyer or authorized representative to the hearing.

*TRANSLATION SERVICES:* DCA will provide translation services at the hearing for you and your witnesses. You may not use your own interpreter at the hearing.

For additional information, visit DCA's website at www.nyc.gov/consumers or call 311.

# EXHIBIT

**CITY OF NEW YORK**
**DEPARTMENT OF CONSUMER AFFAIRS**
-------------------------------------------------------------------x    **CONSENT ORDER**

DEPARTMENT OF CONSUMER AFFAIRS

        Complainant,

   -against-    **Violation # LL 5312954**

RICARDO DIAZ    **License # 1065188**

█████████████████████    **(Process Server Individual)**

        Licensee/Respondent.
-------------------------------------------------------------------x

1. RICARDO DIAZ ("Respondent") acknowledges that the New York City Department of Consumer Affairs ("DCA" or "the Department") duly served Respondent with a Notice of Hearing on February 12, 2013 ("NOH") charging Respondent with violations of the following rules:

   Title 6 of the Rules of the City of New York, Section 2-236(c)(1)
   Title 6 of the Rules of the City of New York, Section 2-236(c)(2)

2. Respondent enters into this Consent Order ("CO") with the Department of Consumer Affairs ("DCA" or "the Department") to resolve these charges without the necessity of a hearing.

3. The acceptance of this Consent Order by the Department shall not be deemed approval by the Department of any of Respondent's business practices, and Respondent shall make no representations to the contrary

## DEFINITIONS

4. "Affidavit of Service" means a sworn written statement made under oath before a notary public in which the process server affirms that service of process in a matter was effectuated and the manner in which service was effectuated.

5. "Bound volume" means a book or ledger that at the time of purchase contains a specified number of unfolded sheets of paper or other material that are permanently secured to covers by stitching, glue or any other such method that is calculated to make readily discernable the removal or insertion of one or more sheets after the first use of such volume.

6. "Chronological" with respect to the notation in the process server record or logbook means that each notation shall be entered sequentially according to the time and date of the activity recorded and without leaving any blank spaces between each entry that would allow for the insertion of any additional notation between any two entries.

7. "Contemporaneous" in relation to entries in the process server record or logbook means at or near the time of the event to which an entry is recorded, or within a reasonable time thereafter.

8. A "contest to service of process" means a challenge to the service of process effectuated by a process server alleged in an answer, motion, or other pleading submitted in a judicial, administrative or other legal proceeding on the ground that the service did not comply with the requirements of New York State or other applicable law, including a hearing commonly known as a "traverse hearing," whether such challenge is waived, settled by stipulation or decided by court order after a hearing.

9. "CPLR" means the New York Civil Practice Law and Rules.

10. "Disposition" of a case or traverse hearing means the court's final decision on the matter.

11. "Logbook" shall mean the bound volume in which a process server maintains records of all attempted and effected services of process, as prescribed by 6 RCNY § 2-233.

12. "Material breach" means the failure to comply with this Agreement in whole or in part by commission or omission without legal excuse.

13. "Paginated" means each page in the volume or logbook must contain either a page number in sequence starting with the number "1" at the time of purchase or an indelible label stating the number of pages the volume originally contained.

14. "Person" shall mean any individual, firm, company, partnership, corporation, association or other organization.

15. "Process" means a summons, notice of petition, order to show cause, subpoena, notice, citation or other legal paper issued under the laws of the State of New York directing an appearance or response to a legal action, legal proceeding or administrative proceeding; provided, however, that if under the laws of the State of New York the mailing of such legal paper is sufficient to effect service, such legal paper shall not be process for the purpose of this Agreement.

16. "Same time" with respect to efforts to make delivery means within two hours before and after of an hour.

17. "Serve" or "service" shall mean the delivery of process in a manner prescribed by the laws of the State of New York.

18. Other terms are defined in 6 RCNY § 2-231.

## INJUNCTIVE RELIEF

### Duty to Comply With Law

19. Respondent shall strictly and promptly comply with all laws, rules, regulations and requirements of the federal, state and municipal authorities and this Agreement when serving process.

20. Respondent shall not serve process for an unlicensed process serving agency.

### Duties When Effectuating Service on a Natural Person

21. When effectuating service of process by conspicuous place service, Respondent shall affix the process to be served to the door of the person to be served and to no other.

22. When effectuating service of process by conspicuous place service, Respondent shall at all times attach the process to the dwelling place door of the person to be served with tape.

23. When making diligent efforts to deliver process in accordance with the requirements of CPLR § 308, Respondent shall not make all attempts of service on the same day and no two attempts at delivery shall be made at the same time on different days.

24. Respondent shall make reasonable efforts to confirm whether the address at which service is attempted is the actual place of business, dwelling place or usual place of abode of the person to be served.  Respondent shall make and maintain a record of those efforts, which shall include, but not be limited to, at least one of the following: inquiring of neighbors and other persons present at those locations, checking public and commercial databases, and requesting information from the owner of the premises, if different from the person to be served.

25. Respondent shall not deliver process at a location that he knows not to be the actual place of business, dwelling place, or usual place of abode of the person to be served, unless permitted by statute or by binding case law.

26. Respondent shall always write "personal and confidential" on the mailing envelope when delivering or completing service by mail to a business address.

27. Respondent shall insure that any mailing is made to the location indicated by the applicable law.

28. Respondent shall not indicate on mailing envelopes that the communication is from an attorney or concerning an action against the person sought to be served.

**Duty to Maintain Proper Records**

29. Respondent shall maintain records of attempted and effected service of process in the City of New York as required by General Business Law § 89-cc and 6 RCNY §§ 2-233, 233a, 233b, 235.

*Affidavits of Service*

30. Respondent shall maintain electronic copies of all affidavits of service signed by him/her. Each affidavit of service shall be maintained as a separate electronic file and the electronic files shall be maintained chronologically and named in the following manner:

> **Process Server Last Name and First Initial (no spaces)-**
> **Date of Service (YYYYMMDD)-**
> **Unique Identifying Number (to distinguish between multiple services on the same date).**

> Example:  smithj-20120101-1

*Logbooks*

31. Respondent shall maintain a record of all service attempted or effected by him/her in the City of New York in a bound volume, which shall mean a book or ledger that **at the time of purchase** contains a specified number of unfolded sheets of paper or other material that are permanently secured to covers by stitching, glue, or any other such method that is calculated to make readily discernable the removal or insertion of one or more sheets after the first use of such volume. The bound volume is often referred to as the process server's logbook.

32. All service attempted or effected by Respondent in the City of New York shall be entered in a single logbook until it is complete.

33. Respondent shall ensure that each page in his/her logbook, **at the time of purchase**, is sequentially numbered starting with the number "1" or contains an indelible label stating the number of pages the volume originally contained.

4

34. All entries shall be made contemporaneously, which shall mean at or near the time of the event as to which an entry is recorded, or within a reasonable time thereafter.

35. All entries shall be made in chronological order, which shall mean that each entry be entered sequentially according to the time and date of the activity recorded and **without leaving any blank spaces** between each entry that would allow for the insertion of any additional notation between any two entries.

36. Each entry in the logbook shall be legible, meaning easily read and discernible in all of its details, and in no way obscured.

37. Corrections shall be made only by drawing a straight line through the inaccurate entry and clearly printing the accurate information directly above the inaccurate entry. All other methods of correction, including but not limited to, erasing, opaquing, obliterating, or redacting, are prohibited.

38. Respondent shall maintain separate entries in each logbook for every attempted and effected service of process *(i.e, entries for attempted and effected services cannot be combined on the same line).*

39. Respondent shall maintain in his/her hardcopy logbooks all information required by General Business Law § 89-cc and 6 RCNY § 2-233 with respect to every case in which he/she attempts or effectuates service of process, including but not limited to the following:

   a. the name **and** license number of the process serving agency from whom the process served was received, or, if not received from a process serving agency, of such other person or organization from whom the process served was received;

   b. the title of the action (if there is one) or a reasonable abbreviation thereof;

   c. the name of the individual, company or organization served, if known;

   d. the date and approximate time service was effected;

   e. the address where service was effected;

   f. the nature of the papers served;

   g. the court in which the action has been commenced;

   h. the index number of the action, if known;

   i. the description of the individual served, if applicable;

5

j.  the type of service effected (personal, substituted, conspicuous, or corporate);

k.  for service of process effected by conspicuous service, the color **and** composition of hallway walls adjacent to the door to which process was affixed;

l.  for service of process effected by conspicuous service, the color **and** composition of the hallway floor or doorstep;

m.  for service of process effected by conspicuous service, the location of the premises in relation to stairs, elevators or entranceways; and

n.  for service of process made pursuant to RPAPL § 735(1) using registered or certified mail, the postal receipt number of the registered or certified mail.

*Electronic Records and GPS*

40. Respondent shall maintain records of attempted and effected service of process in the City of New York in an electronic format that is resistant to tampering, as prescribed by 6 RCNY § 2-233a(a).  Respondent shall ensure that the information contained in such records is accurate and complete.

41. Respondent shall maintain the electronic records that are required to be maintained pursuant to 6 RCNY § 2-233a by choosing one of the following methods:

Method 1: Scanning logbooks into image files (*e.g.*, .PDF or .TIFF) and backing up the files to a portable media device in accordance with 6 RCNY § 2-233a(a)(1).

Method 2: Inputting information into the DCA-created Excel spreadsheet (available on the DCA website) and backing up the file to portable media devices in accordance with 6 RCNY § 2-233a(b)(1).

Method 3: Uploading data to a third party service provider in accordance with 6 RCNY § 2-233a(b)(1).

42. If Respondent chooses to maintain electronic records by using Methods 2 or 3, Respondent shall ensure that the following information is contained in each entry:

a.  the name of the individual process server to whom service was assigned, entered in two fields (last name, first name);

b. the license number of the individual process server to whom service was assigned, entered as a seven digit number, where the first number is zero if the process server's license number is less than seven digits;

c. the title of the action or proceeding, if any;

d. the name of the individual, company or organization served, if known;

e. the date that service was effected, entered as MM/DD/YYYY;

f. the time that service was effected, entered as military time;

g. the address where service was effected, entered as three different fields such that one field will be for the street address and any apartment number, the second field will be for the city or borough, and the third field will be for zip code;

h. the nature of the papers served;

i. the court in which the action was commenced, entered as either Civil Court NYC, Civil Supreme, Criminal, Housing(L/T), or District Court, followed by the county of the court, the judicial department if appellate, or the federal district;

j. the full index number, entered with all information necessary to identify the case, such as XXXXX/XX, unless the case is a Civil Local matter, in which case, it will include the prefix of CV, CC, LT, MI, NC, RE, SC, or TS;

k. if service was effected pursuant to subdivisions (1) through (3) of CPLR §308, a description of the person served, consisting of six fields, including sex, hair color, approximate age, height, weight, and any other identifying features provided by the process server;

l. whether service was delivered, as indicated by a Y or N;

m. the type of service effected, entered as a P for personal service, an S for substitute service, a C for conspicuous service, or a CO for corporate service;

n. if service was effected pursuant to subdivision (4) of CPLR §308 or subdivision one of RPAPL §735, a description of the door and the area adjacent;

43. In every instance in which Respondent attempts or effects service of process in New York City, Respondent shall, immediately after attempting or effecting service, create an electronic record of the location, time and date of the attempted or effected service, as determined by Global Positioning System ("GPS") technology or, in the event that no GPS signal is available at the time of attempted or effected service of process, the

location, time and date as determined by triangulated cell tower signals.  Respondent shall ensure that the information contained in such records is accurate and complete.

44. Except when Respondent attempts or effects service of process at multiple apartments or offices within the same building, in every instance in which Respondent attempts or effects service of process in New York City, Respondent shall ensure that his/her GPS records include a photograph of the outside of the building where Respondent attempted or effected service of process.  The photograph must include the entire front entrance door to the building, which shall take up no more than one-third of the photograph.  The photograph should include, if possible, the number of the building as well.  If Respondent attempts or effects service of process at multiple apartments or offices within the same building, only the GPS record corresponding to the last attempted or effected service of process within the building must include a photograph of the outside of the building where Respondent attempted or effected service of process.  Where Respondent is unable to obtain a GPS or cellular signal in the direct vicinity of the building where process was attempted or effected, Respondent shall, as soon as a GPS or cellular signal becomes available:

    a.  take a photograph of the outside of the nearest building in accordance with the instructions above; and

    b.  indicate in the GPS record the address of the photographed building or the nearest cross-section.

The requirements of this paragrasph shall not become effective until September 1, 2013.

45. Prior to signing this Consent Order, Respondent shall enter into a contract with an independent third party ("the Contractor") pursuant to which the Contractor will provide services and perform functions described below that enable Respondent to meet the data storage and retrieval requirements set forth below, provided, however, that if Respondent performs process serving activities distributed to him or her by a licensed process serving agency, the process server may utilize the device and facilities for the electronic record of service that the process serving agency obtains under a contract with a Contractor.  Respondent shall ensure that the Contractor store each electronic record of service according to the following terms:

    a.  the original digital file must be maintained by the Contractor unaltered for a period of not less than seven years;

    b.  neither Respondent nor the process serving agency will be permitted to alter the original data, but may obtain copies of the original data file;

c.  the Contractor must maintain the records in a manner that will permit retrieval by the DCA license number of the process server, the DCA license number of the process serving agency that has distributed the process for service, the name of the plaintiff or petitioner, the name of the defendant or respondent, the docket number (if any), the name of the person to whom process is delivered and a unique file identifier of the process being served;

d.  the Contractor must maintain the records in a manner that will ensure that their integrity is adequate for admissibility in a judicial proceeding under the rules of evidence applicable in the state of New York;

e.  the Contractor must produce upon request by the Department, and to any other party according to an appropriate order or subpoena, a copy of the electronic records, or any reasonably described part involved, certified to be true and accurate;

f.  the Contractor must provide to the Department upon request a street map in hard copy format and access to an interactive electronic street map that display the locations where the digital records were recorded with a date and time provided by GPS or cellular date and time; and

g.  the Contractor must provide to the Department upon request, and to any other party according to an appropriate order or subpoena, such software as may be necessary to display the electronic records in an MS Excel spreadsheet, 2003 version or later, with the following fields and in the following data formats:

- a unique file identifier of the process being served;
- the process server's license number;
- the process serving agency's license number;
- Plaintiff or petitioner, which must be specified by the last name of the first plaintiff, or, if not a natural person, the name of the entity, except that the field may contain the name of every plaintiff or petitioner in the case, provided that the entire record is searchable by a wildcard search of the name of any plaintiff or petitioner;
- Defendant or respondent, which must be specified by the last name of the first defendant, or, if not a natural person, the name of the entity, except that the field may contain the name of every defendant or respondent in the case, provided that the entire record is searchable by a wildcard search of the name of any defendant or respondent;
- the full docket/index number, which must be entered with all information necessary to identify the case, such as XXXXXX/XX, unless the case is a Civil Local matter, in which case, it will include the prefix of CV, CC, LT, MI, NC, RE, SC, or TS;

9

- the date that service was effected or attempted **according to the device**, which must be entered as MM/DD/YYYY;
- the time that service was effected or attempted **according to the device**, which must be entered in military time;
- the date that service was effected or attempted **according to GPS or cellular signals**, which must be entered as MM/DD/YYYY;
- the time that service was effected or attempted **according to GPS or cellular signals**, which must be entered as military time;
- the address where service was effected or attempted, which must consist of four fields in the following order: building number, street name, city, and zip code, which must be five digits. All address information must be CASS (Coding Accuracy Support System) processed to insure its accuracy with software graded to be CASS Certified by the National Customer Support Center of the United States Postal Service;
- the name of the intended recipient of the process, which must be entered in two data fields such that the first data field is the last name of the intended recipient, or, if not a natural person, the name of the entity, and the second data field is the first name of the intended recipient if a natural person; and
- the name of the person to whom process was delivered, which must be entered in two data fields such that the first data field is the last name of the person, and the second data field is the first name of the person.

**Completion of Affidavits and other Proofs of Service**

46. Respondent shall strictly and promptly conform to all federal, state and municipal laws, rules, regulations and requirements relating to the preparation, notarization and filing of affidavits of service, as required by 6 RCNY § 2-234.

47. Respondent's affidavits of service shall be truthful, contain all information required by law, and contain the following facts, where applicable:

   a. Respondent's license number;
   b. Except where the process effectuated was not received from a process serving agency, the name and address of the process serving agency from whom the process served was received;
   c. A detailed description of Respondent's efforts to effectuate personal delivery within the State;
   d. Respondent's source of the information about the whereabouts of the person to be served;
   e. A description of Respondent's efforts to confirm the information about the whereabouts of the person to be served;

    f.  The location and detailed description of the place where delivery was effectuated;

    g.  The time that process was delivered;

    h.  Whether the Respondent made use of a picture or other physical representations of the person(s) to be served when delivering process;

    i.  A description of the age, height, weight, skin color, and hair color of the person to whom delivery of process was made;

    j.  Whether Respondent knows or does not know the name(s) of the person(s) to whom service was delivered.

    k.  The name and description of any witnesses to the delivery of process;

    l.  Where service of process is accomplished by personal delivery, all information confirming that Respondent knew the person to whom process was delivered to be the actual intended recipient of the process; and

    m.  Where information required is unknown, Respondent shall clearly state so in the affidavit.

48. Respondent shall not sign or notarize or cause to be signed or notarized any affidavit of service until all factual averments have been set forth.

49. Respondent shall not sign his/her name on any affidavit containing any information that has the capacity, tendency or effect of intentionally misleading a reader of the affidavit.

50. Any affidavit affirmed by Respondent that has the capacity, tendency or effect of misleading a reader of the affidavit shall be considered intentional if there are repeated similar acts because of Respondent's or Respondent's agent's use of canned or form language.

51. It shall be the Respondent's burden to show that he/she did not intend the affidavit to be misleading.

52. Respondent shall not use fictitious names in his/her affidavit to refer to defendants or persons, except when Respondent is unable to obtain the name of the person. Where Respondent is unable to obtain the first name of the person, Respondent shall use either "John" (for a male) or "Jane" (for a female) to represent the first name of the person.   When Respondent is unable to obtain the last name of the person, Respondent shall use "Doe" to represent the last name of the person.

**Duty to Maintain List of Process Server Agencies Assigning Process**

53. Respondent shall maintain a list of the name and address of each process serving agency from whom Respondent received process to be served in New York City.  The process server shall maintain the list for seven (7) years and produce it upon request by the Department, as required by 6 RCNY § 2-234b.

**Duty to Report Contested Service of Process**

54. Whenever Respondent receives any type of notice, including an oral communication, that a court has scheduled a hearing concerning a contest to service of process by Respondent (a.k.a. "traverse hearing"), Respondent shall submit a report to the Department, within ten days of receiving such notice, using the traverse report form titled "Traverse Report Form For Process Servers/Agencies Who Signed A Consent Order," available on the DCA Process Server Website (nyc.gov/processserver). Respondent shall submit the completed traverse report form by e-mail to: **traversereports@dca.nyc.gov**.

55. Each traverse report form notifying the Department of a scheduled traverse hearing shall minimally include the following information:

    a. The date of the hearing;
    b. The name of the court, county, and judge before whom the hearing is scheduled;
    c. The index number of the action or proceeding;
    d. The name of the petitioner or plaintiff;
    e. The name of the respondent or defendant;
    f. The process server's name;
    g. The process server's license number; and
    h. The name of the process serving agency on behalf of whom service was effectuated.

56. Respondent shall learn the result of each **scheduled** traverse hearing that concerns service of process by Respondent, including any judicial order, waiver of the hearing or voluntary settlement resolving the challenge to service of process.

57. Respondent shall obtain a copy of the court's order or decision on any traverse hearings that actually occur, including any stipulation or court file jacket setting forth the final disposition of the matter.

58. Within ten days of learning the result of a traverse hearing, including any judicial order, waiver of the hearing or voluntary settlement resolving the challenge to service of process, Respondent shall notify the Department of the result by submitting a traverse report to the Department by email, to **traversereports@dca.nyc.gov**, using the traverse report form titled "Traverse Report Form For Process Servers/Agencies Who Signed A Consent Order," available on the DCA Process Server Website.

59. Respondent shall append a copy of the court's order or decision on any traverse hearings that actually occur to Respondent's traverse report, including any stipulation or court file jacket setting forth the final disposition of the matter.

60. Respondent and the process serving agency for whom he or she serves process must **each** submit a completed Traverse Report Form upon learning of the scheduling of a traverse hearing **and** learning the result of a traverse hearing.

61. Respondent shall maintain, in one Microsoft Excel file, an electronic record of every traverse hearing scheduled concerning service of process by Respondent.  This shall be done by using the Excel spreadsheet titled "Record of Scheduled Traverse Hearings," available on the DCA Process Server Website.

### Providing Identification

62. Respondent may not possess, display or wear any badges, insignias, shields, medals or decoration while serving process.

63. Respondent shall display his Department identification card upon request of a person upon whom Respondent is attempting service or any other interested person.

### Training and Exams

64. Respondent shall attend any future training about the laws and regulations that relate to and govern the service of process in the City of New York upon notice from the Department that it has determined that there is available within the City of New York one or more programs that provide such training in a satisfactory manner.

65. Respondent's failure to provide proof of having attended such training, after notice has been issued that such training is available, shall be sufficient grounds for the revocation of his or her license or denial of his or her license renewal application until such time as this requirement is met.

### Inspection of Records

66. Upon written demand by the Department, Respondent shall provide to the Department, within ten (10) days of the demand, any documents or records that the Department deems necessary to ascertain compliance with this Consent Order. This provision shall not relieve Respondent of any other obligations imposed by the Department's laws or rules.

67. Upon notification from the Department, Respondent shall appear at the Department for a review of Respondent's compliance with the terms of this Agreement and such other issues as the Department, in its discretion, deems appropriate.  Respondent shall produce such records as the Department may request at the scheduled meeting. Failure to appear at a scheduled meeting or produce requested documents will constitute a violation of this Order.

## RESOLUTION OF CONSUMER COMPLAINTS

68. Respondent shall provide to the Department a reply to all consumer complaints to the Department relating to Respondent's process serving activity within ten (10) business days of receiving the complaint.

69. Respondent shall respond to any subsequent communications from the Department concerning the complaint within five (5) business days.

70. Nothing in this provision waives or diminishes Respondent's obligation to comply with Title 6 of the Rules of the City of New York, Section 1-13.

71. Respondent shall notify the Department within ten (10) days of receipt of any (i) complaints, actions or proceedings filed against Respondent by consumers in any forum, including state and federal courts, the Better Business Bureau, the Office of the Attorney General of the State of New York, or any other agency or association, (ii) actions, proceedings or investigations by any government agency against Respondent; and (iii) results of any actions, proceedings or investigations against Respondent that resulted in the revocation or suspension of a license, the imposition of fines or restitution, a voluntary settlement, a court order, a criminal guilty plea, or a conviction.

72. Respondent shall provide to the Department a copy of every written complaint that Respondent receives from any other governmental or non-governmental entity and Respondent's response thereto within ten days of Respondent's receipt of the complaint.  Respondent shall report to the Department the resolution of every such complaint and provide a copy of any writing setting forth the resolution within ten (10) business days of learning such resolution.

## RESPONDENT'S DUTY TO REPORT CHANGES OF ADDRESS TO THE DEPARTMENT

73. Respondent affirms that the address and telephone number listed with the Department are current and correct.

74. Respondent represents that the following is his e-mail address:



75. Respondent acknowledges that the Department intends to use this e-mail address to communicate official matters to Respondent and Respondent agrees to accept such communications and respond to them in a timely manner.

76. Respondent shall notify the Department when his or her address, telephone number or e-mail address changes, in writing, within ten (10) days of such change.

77. Respondent shall provide such notification in writing to the Department's Licensing Division at 42 Broadway, 5th Floor, NY, NY 10004 and to the Department's Legal Division at 42 Broadway, 9th Floor, NY, NY 10004.

78. Respondent's failure to notify the Department of any change in address in a timely manner shall be sufficient grounds for the suspension of any Department license held by Respondent for a period of not less than three months, upon proof of the failure to notify the Department of such change and an opportunity to be heard.

79. Respondent's failure to respond to any Department communication within the period specified in this Agreement or by law shall be deemed Respondent's failure to notify the Department of his or her whereabouts, and shall be sufficient grounds for the suspension of any or all of Respondent's Department licenses, upon proof of such failure to respond and an opportunity to be heard.

## RESPONDENT'S DUTY TO RESPOND TO ALL REQUESTS FOR INFORMATION ON CRIMINAL COMPLAINTS OR ARRESTS

80. Respondent will respond within the time required to any correspondence from the Department requesting further information on the status or disposition of any criminal complaints or arrests of Respondent.

81. Respondent's failure to respond within the time required to any correspondence from the Department regarding the status or disposition of any criminal complaint or arrest of Respondent will be considered a breach of this Agreement and shall be sufficient grounds for the suspension of Respondent's license, upon proof of such failure and an opportunity to be heard.

## FINES

82. Respondent shall pay a fine of **$500** in settlement of all the violations to date in the above-referenced matter. Payment is due upon execution of this CO.

## BREACH OF THIS AGREEMENT

83. A finding, after notice and hearing, that Respondent has committed a material breach of the terms of this Agreement shall be sufficient grounds for the revocation of Respondent's license and for ineligibility to be licensed for a period of five (5) years.

84. Specific violations of this Agreement shall constitute independent and separate violations of any applicable law, regulation or rule.

15

85. Violations of laws, violations of Department rules and violations of this Agreement shall be assessed as separate fines, with a maximum penalty of $1,000.00 each.

## WAIVER OF APPEALS

86. Respondent waives any right to a hearing, appeal of or any challenge of the facts alleged by the above-referenced violation under Section 20-104 of the New York City Administrative Code or under Article 78 of the New York State Civil Practice Law and Rules, Sections 7801-7806, in any forum.

## DEPARTMENT'S AUTHORITY

87. Nothing in this Consent Order shall be construed to limit in any way the authority of the Department to exercise its regulatory or enforcement powers under Sections 20-104 or 20-409 of the Code.

Agreed to by Respondent

Accepted for the NYC Department of Consumer Affairs

By: RICARDO DIAZ

By: ████████████████, Esq.

Legal Division

_____   4|7·13
Signature            Date

████████████████   4/24/13
Signature            Date

Businesses licensed by the Department of Consumer Affairs (DCA) must comply with all relevant local, state and federal laws. Copies of New York City licensing and consumer protection laws are available in person at DCA's Licensing Center, located at 42 Broadway, 5th Floor, New York, NY, by calling 311, New York City's 24-hour Citizen Service Hotline, or by going online to www.nyc.gov/consumers.

# EXHIBIT E

# Civil Court of the City of New York

County of <u>Bronx</u>

Index Number <u>002890-05/BX</u>

_____

1511 SHERIDAN LLC

*Plaintiff(s),*

**PROPOSED
ANSWER IN WRITING
RENT ARREARS COLLECTION**

-against-

JOSE L CRESPO

*Defendant(s).*

_____

Defendant <u>Jose L Crespo</u> answers the Complaint as follows:

ANSWER: (Check *all that apply*)
1. [✓] General Denial: I deny the allegations in the Complaint.
   SERVICE
2. [✓] I did not receive a copy of the Summons and Complaint.
3. [ ] I received the Summons and Complaint, but service was not correct as required by law.
   DEFENSES
4. [✓] I do not owe this debt.
   a. [ ] I paid all of the alleged debt.
   b. [✓] I was constructively evicted from the premises. (Forced to leave because of harassment or conditions dangerous to the occupants' health and safety. Specify the conditions below, in line #17.)
   c. [ ] The lease and/or rent charged was illegal.
   d. [ ] Plaintiff accepted the surrender of the premises.
   e. [ ] I was not under a lease or other obligation for the months Plaintiff seeks rent.
   f. [ ] A third party is responsible for the rent allegedly owed. (May apply to Section 8, SCRIE, DRIE.)
5. [ ] I did not incur this debt.  I am a victim of identity theft or mistaken identity.
6. [✓] I dispute the amount of the debt.
   a. [ ] I paid part of the alleged debt.
   b. [✓] Plaintiff sued for an incorrect amount of rent.
   c. [✓] Plaintiff failed to return or credit me for my security deposit.
   d. [✓] I am owed an abatement because the landlord breached the warranty of habitability based on conditions dangerous to the occupants' health and safety. (Specify the conditions below, in line #17.)
   e. [ ] I am owed an abatement because I paid to make repairs that were the landlord's responsibility.
   f. [ ] Plaintiff re-let the premises during the period for which it has sued me.
7. [ ] I am a senior citizen who stopped making payments pursuant to Real Property Law § 227-a.
8. [ ] I am a domestic violence survivor who stopped making payments pursuant to Real Property Law § 227-c.
9. [ ] This debt was incurred under circumstances of duress.
10. [ ] Plaintiff lacks standing. (I do not have a business relationship with Plaintiff.)
11. [ ] Statute of limitations. (The time has passed to sue on this debt: more than six years.)
12. [ ] Laches. (Plaintiff has excessively delayed in bringing this lawsuit to my disadvantage.)
13. [ ] This debt has been discharged in bankruptcy.
14. [✓] Violation of the duty of good faith and fair dealing.
15. [ ] Unconscionability. (The contract is unfair.)
16. [ ] Defendant is in the military.

17. [✓] Other: <u>For many months, Plaintiff failed to replace large parts of my ceiling that had fallen after a huge leak in the</u>
<u>apartment above. I took Plaintiff to housing court, which ordered Plaintiff to make repairs and scheduled dates for Plaintiff</u>
<u>to access my apartment. Plaintiff never showed up on any of those dates to make the repairs, so I started withholding rent.</u>

18. [✓] Please take notice that my only source of income is <u>public assistance</u>, which is exempt from collection.

This case is scheduled to appear on the court calendar as follows:
Date: _____ Part: _____ Room: _____ Time: _____ Both sides notified:  Yes   No

## COUNTERCLAIMS

19. ☑ Plaintiff failed to refund/credit my security deposit of $ 450_____ plus interest.

20. ☐ Plaintiff is retaining overpayments that I made in an amount of $_____.

21. ☐ Plaintiff owes me damages for injuries I suffered as a result of conditions on the premises that were dangerous to my health and safety or that of my dependents. These damages total $_____.

22. ☐ Plaintiff owes me damages for expenses that I incurred as a result of Plaintiff's failure to perform its obligation(s) arising under the lease. These damages total $_____.

23. ☐ Plaintiff owes me damages for expenses that I incurred in successfully defending this action and/or a previous action.

24. ☑ Other counterclaim(s): $450 plus interest_____ Reason: Plaintiff never refunded my last month's rent payment,

which I prepaid upon signing my lease._____

**VERIFICATION**

State of New York, County of _____ss:

_____, being duly sworn, deposes and says: I am the respondent/person claiming possession in this proceeding. I have read the Answer in Writing and know the contents thereof to be true to my own knowledge, except as to those matters stated on information and belief, and as to those matters I believe them to be true.

Sworn to before me this _____ day of _____ 20____        _____

                                                                   Signature of Defendant

_____

Notary/Court Employee        _____

                             Defendant's address

This case is scheduled to appear on the court calendar as follows:

Date: _____ Part: _____ Room: _____ Time: _____ Both sides notified:  Yes   No