

WWW.RIVKINRADLER.COM

926 RXR Plaza
Uniondale, NY 11556-0926
T 516.357.3000 F 516.357.3333

**KENNETH A. NOVIKOFF**
PARTNER
(516) 357-3110
ken.novikoff@rivkin.com

February 13, 2023

**VIA ELECTRONIC MAIL**

Honorable J. Paul Oetken
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 20D
New York, New York 10007

    Re:    *Crespo v. Gutman, Mintz, Baker & Sonnenfedlt, LLP.*
                Case No. 1:22-cv-6599-JPO

Your Honor:

      The law firm of Rivkin, Radler LLP represents Defendants Gutman, Mintz, Baker & Sonnenfeldt, LLP, ("Gutman"), Gary Thigpen, ("Mr. Thigpen"), and Eric Keilbach, (Mr. Keilbach"), (collectively the "Gutman Defendants"). This letter-motion is submitted in support of the Gutman Defendants' motion pursuant to Fed. R. Civ. P. 30(d)(3)(A), made during the deposition of Defendant Gary Thigpen on February 2, 2023[1], and for a Protective Order pursuant to Fed. R. Civ. P. Rule 26(c), limiting the questioning of Mr. Thigpen to the allegations in the Amended Complaint specifically addressing his interactions and/or communications with Plaintiff Jose Crespo, and any further involvement, if any, that he had as an employee of Gutman regarding the collection efforts by Gutman concerning Plaintiff Jose Crespo, or the efforts of other Gutman employees that he has personal knowledge as it relates to Plaintiff Jose Crespo. The Gutman Defendants request an informal conference to address this application.

      In this action, Plaintiff alleges five claims for relief against Mr. Thigpen, Mr. Keilbach and Gutman: (1) violation of the Fair Debt Collection Practices Act; (2) conversion; (3) violation of General Business Law § 349; (4) negligence, and (5) gross negligence. Plaintiff's claims for relief against the

---

[1] I respectfully submit that the discussion had with Plaintiff's counsel during Mr. Thigpen's deposition concerning the Gutman Defendants' Rule 30(d)(3)(A) motion complies with Your Honor's Individual Court Rule 4.B. requirement of a "meet and confer."

66 South Pearl Street, 11th Floor       25 Main Street                              477 Madison Avenue               2649 South Road
Albany, NY 12207-1533                  Court Plaza North, Suite 501             New York, NY 10022-5843        Poughkeepsie, NY 12601-6843
T 518.462.3000 F 518.462.4199          Hackensack, NJ 07601-7082                T 212.455.9555 F 212.687.9044   T 845.473.8100 F 845.473.8777
                                       T 201.287.2460 F 201.489.0495

RIVKIN RADLER LLP

February 13, 2023
Page 2

Gutman Defendants concern Gutman's collection efforts, on behalf of its client, and the individual Defendants' actions, based upon a Default Judgment against Mr. Crespo concerning unpaid rent.[2]

Mr. Thigpen, who is not a lawyer, is a salaried employee of Gutman. Mr. Thigpen is an Account Representative in Gutman's Collection Department. Mr. Thigpen is not Officer, Manager or Supervisor for Gutman.

Mr. Thigpen was noticed by Plaintiff for his deposition. *See, Exhibit "A."* Based upon subsequent communications among counsel, it was agreed that Mr. Thigpen would be deposed on February 2, 2023. Plaintiff also served Mr. Keilbach with a Notice for Deposition. *See, Exhibit "A."* Mr. Keilbach's deposition has not been taken yet.

Plaintiff also served Gutman with a Rule 30(b)(6) Deposition Notice, along with a list of the topics that will presumably be addressed with Gutman's Rule 30(b)(6) witness. *See, Exhibit "A."* Critically, Mr. Thigpen was not designated as Gutman's Rule 30(b)(6) witness. Instead, I advised Plaintiff's counsel that Mr. Keilbach would be Gutman's Rule 30(b)(6) witness.

Mr. Thigpen's alleged involvement in the collection efforts undertaken by Gutman was limited to telephone conversations with Mr. Crespo concerning a restraint that was placed on his bank account by Gutman, acting on behalf of its client, that ultimately led to Mr. Crespo agreeing to, after a conversation with Mr. Thigpen, executing a conditional release which was sent to him by Mr. Thigpen. *See, Am. Comp.*, at ¶¶ 69 – 73; 75. As is readily apparent, Mr. Thigpen's alleged involvement with Mr. Crespo was both temporally and substantively discreet.

Accordingly, Mr. Thigpen was prepared to answer all questions pertaining to his interactions/communications with Mr. Crespo, his involvement in the collection efforts concerning Mr. Crespo and his interactions, if any, with any other any Gutman employee, or third-party concerning Mr. Crespo. Stated differently, if the questions related to Mr. Crespo and Mr. Thigpen's involvement with and/or knowledge of same, and did not otherwise seek disclosure of privileged communications, then the undersigned would have had no reasonable basis to instruct Mr. Thigpen not to answer and seek relief under Rule 30(d)(3)(4).[3]

Instead, Plaintiff's counsel began questioning Mr. Thigpen concerning his specific practices unrelated to anything concerning his interaction and/or involvement with Mr. Crespo, as well as Gutman's

---

[2] With the assistance of legal counsel, but after Mr. Thigpen's interaction with Plaintiff Crespo allegedly commenced and ended, Plaintiff secured the vacatur of the Default Judgment. Upon the vacatur of the Default Judgment, all monies that had been garnished under what had at the time been a lawful and validly entered judgment were returned to Plaintiff, except for approximately $79 that the Erie County Sheriff had taken as poundage.

[3] Indeed, the undersigned believed that certain questions preceding those objected to were also asked in bad faith and were inappropriate to ask Mr. Thigpen, but I nevertheless allowed those questions to be answered in the hope that these would be the only questions unrelated to Mr. Crespo. My hope, I quickly discovered, was unfounded.

RIVKIN RADLER  LLP

February 13, 2023
Page 3

business practices untethered from anything to do with Mr. Crespo.  It became clear, as I advised Plaintiff's counsel, that she was seeking information that would arguably only be appropriate, in the first instance, if Mr. Thigpen was Gutman's designated Rule 30(b)(6) witness, (which he was not), <u>and</u> if it was covered by Plaintiff's Rule 30(b)(6) Notice.  Indeed, what Plaintiff's counsel was effectively doing was seeking a backdoor into obtaining from Gutman pattern and practice discovery, which is inappropriate through Mr. Thigpen, and not justified by any of the claims asserted against Mr. Thigpen (or against the other Gutman Defendants).

### 1. The Questions Objected To And Subject To The Instant Motion

Plaintiff's counsel's first question[4] that I instructed Mr. Thigpen not to answer, and for which the Gutman Defendants moved pursuant to Rule 30(d)(3), was:

Q:     *About how many accounts does Gutman Mintz have for collection? (p. 23, ln. 6 – 7).* [5]

Plaintiff's next question subject to was:

Q:     *About how many accounts are you working with on a daily basis? (p. 25, ln. 12 - 13).*

For the same reason, and making the same motion, I instructed Mr. Thigpen not to answer this question.

---

[4] A copy of the deposition transcript for Mr. Thigpen is attached hereto as *Exhibit "B."*

[5] I explained the basis for my instruction not to answer and my motion, as follows:

> KEN NOVIKOFF:  Okay.  I'm going to object now.  And I want to make a Rule 30(d)(3) motion.  He is not here as a 30(b)(6) witness.  He's here to discuss his involvement with Mr. Crespo.  I've given latitude in terms of your questioning, which I think has absolutely nothing to do with Mr. Crespo.  So you've – you -- if you choose to, that's something, you may want to talk with Mr. Keilbach about if you've identified that as a topic for a 30(b)(6) deposition.  But I'm not … we – can talk to the judge now.  We can mark this for a ruling and go back after the deposition.  It's entirely up to you.  but … No. Emma, -- - this is -- this is, you know, this is not a 30(b)(6).  This is far afield now from what he did with Mr. Crespo and why he's a named plaintiff -- or named defendant in this action. *(p. 23, line 8- to p. 24, ln. 2)*

> KEN NOVIKOFF:  You're -- you're -- you're digging for information concerning the practice of Gutman Mintz.  You've identified Mr. Keilbach as a 30(b)(6) witness.  I don't have the list of topics that you've identified in the notice.  If this is one of them, you could ask Mr. Keilbach about it.  But this witness is not going to be here to talk about the practices of Gutman, Mintz.  He's here to talk about his involvement with Mr. Crespo and the allegations that you have made against him with regard to Mr. Crespo claim.  Again, we can -- we can get the judge on the phone now, if you have his number, we can mark this for a ruling and we can address it afterward.  And if Mr. Thigpen has to come back, then he will.  That's not a problem.  But this is not going to be a 30(b)(6) deposition through Mr. Thigpen. *(p. 24, lines 6-22).*

RIVKIN RADLER LLP

February 13, 2023
Page 4

Plaintiff's counsel then contacted Your Honor's courtroom to address the motion. After being told of Your Honor's unavailability, counsel engaged in additional dialogue concerning the basis for the motion and whether to continue with the deposition, after which Plaintiff's counsel decided to ask a few more questions. *See, gen, id., at p. 26, ln. 16 – 28, ln. 10; p. 29, ln. 9 – p. 34, ln. 12.*

Some of the questions I allowed Mr. Thigpen to respond to, notwithstanding my opinion that they were irrelevant to claims asserted against Mr. Thigpen and the other Defendants. Below are the additional questions that I instructed Mr. Thigpen not to answer as I believe they were asked in "bad faith," and which are also the subject of this motion:

> Q: *... with the accounts that you are collecting on, about what percent of those would be accounts that have been reduced to a judgment? (p. 34, ln. 14 - 16).*
>
> Q: *... about how many bank restrains do you send out per year? (p. 35, ln. 6 - 7).*
>
> Q: *... about how many conditional releases do you send now per year? (p. 35, ln 11 - 12).*
>
> Q: *And when you receive money from a consumer about how much of that goes to Gutman, Mintz? (p. 36, ln. 10 - 11).*
>
> Q: *And what collection software do you use at Gutman Mintz? (p. 36, ln. 18 - 19).*
>
> Q: *... [a]nd do you use mail merge for sending out information, subpoenas and bank restraints? (p. 36, ln. 22 - 23).*
>
> Q: *And if a judgment against a consumer is vacated and your ordered to return money to the consumer, how does that process work? (p. 36, ln. 3-5).[6]*

**2. Rule 30(d)(3)(A) Was Complied With**

At a deposition, "[a]n objection must be stated concisely in a nonargumentative and nonsuggestive manner." *Fed. R. Civ. P. 30(c)(2).* Counsel "may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule

---

[6] After this last question, I stated the following:

KEN NOVIKOFF: … Yeah. Note my objection. I'm going to make the same motion because again, he should not be speaking about what the practice and policy is of Gutman is with regard to that. You certainly can ask him about what occurred with Crespo because, again, I don't think, you know, according everything we've seen that - - that there was a vacatur of the judgment. So I think if you limit it to Crespo, I have no problem with it. But if you're going to go broadly to what the firm's policies and practices are, one, I don't think you've laid a foundation for it, and two, I just think it's inappropriate for this witness. *(p. 37, ln. 13 - 25).*

RIVKIN RADLER LLP

February 13, 2023
Page 5

30(d)(3)." *Weinrib v. Winthrop-Univ. Hosp.*, 2016 U.S. Dist. LEXIS 37102, 2016 WL 1122033, at *2 (E.D.N.Y. Mar. 22, 2016) (internal quotations & citations omitted). Specifically, Rule 30 provides that, "[a]t any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." *Fed. R. Civ. P. 30(d)(3)(A)*.

Here, the Gutman Defendants complied with the dictates of Rule 30(d)(3)(A).

### 3. Gutman Defendants' Motion Should Be Granted And A Protective Order Should Issue

As previously noted, the questions identified above and which are the subject of the instant motion, bear no reasonable relationship to the allegations asserted against Mr. Thigpen specifically, or the claims for relief asserted against Mr. Thigpen generally. Indeed, these questions, (and any similar ones that Plaintiff's counsel would ask), have either been asked because Plaintiff's counsel is concerned that they were not identified in the Rule 30(b)(6) Notice served upon Gutman,[7] and counsel was hoping to slip these questions in through in Mr. Thigpen's deposition, or Plaintiff's counsel was attempting to back-door her way into improper disclosure of pattern and practice discovery.

Regardless, the questions posed were done in "bad faith," and, as such, the Gutman Defendants' Rule 30(d)(3)(A) motion should be granted, and the appropriate Protective Order pursuant to Fed. R. Civ. P. Rule 26(c) be imposed limiting Plaintiff's counsel's questioning of Mr. Thigpen to the allegations in the Amended Complaint specifically addressing his interactions and/or communications with Plaintiff Jose Crespo, and any further involvement, if any, that he had as an employee of Gutman regarding the collection efforts by Gutman concerning Plaintiff Jose Crespo, or the efforts of other Gutman employees that he has personal knowledge as it relates to Plaintiff Jose Crespo.

Very truly,

RIVKIN RADLER, LLP

*Kenneth A. Novikoff*

Kenneth A. Novikoff

---

[7] Had Plaintiff's counsel identified the topics covered by the questions at issue in this Motion in Plaintiff's Rule 30(b)(6) Notice, Gutman would have moved for a Protective Order.