# AHMAD KESHAVARZ
*Attorney at Law*

---

16 COURT ST., 26TH FLOOR
BROOKLYN, NY 11241-1026

WWW.NEWYORKCONSUMERATTORNEY.COM
E-mail: ahmad@NewYorkConsumerAttorney.com

Telephone: (718) 522-7900
Fax: (877) 496-7809

February 15, 2023

VIA ECF
Hon. J. Paul Oetken
United States District Court
Southern District of New York
500 Pearl Street, Courtroom 20D
New York, NY 1007

> Re:  Opposition to DE 40, Letter Motion for Discovery re the Gutman Defendants' Motion Pursuant to Fed. R. Civ. P. 30(d)(3)(A) and for a Protective Order Pursuant to Fed. R. Civ. P. Rule 26(c)
>
> *Crespo v. Gutman, Mintz, Baker & Sonnenfeldt, LLP, et al,*
> **Case No. 1:22-cv-6599-JPO**

Dear Judge Oetken:

The undersigned represents Plaintiff Jose Crespo in this above-entitled action. Plaintiff files this Opposition to DE 40, captioned "Letter Motion for Discovery re the Gutman Defendants' Motion Pursuant to Fed. R. Civ. P. 30(d)(3)(A) and for a Protective Order Pursuant to Fed. R. Civ. P. Rule 26(c)." (the "Motion")

### 1. Background.

On August 3, 2023 Plaintiff Jose Crespo brought suit against the debt collection law firm Gutman, Mintz, Baker & Sonnenfeldt, LLP ("Gutman"), Gutman's collector Gary Thigpen, and Gutman's attorney Eric Keilbach (collectively "the Gutman Defendants") for violating the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA"); and against the Gutman Defendants and putative judgment creditor 1511 Sheridan LLC for violating N.Y. Gen. Bus. Law § 349, committing conversion, and committing negligence and gross negligence, including by executing on and refusing to release exempt unemployment funds. During discovery the Gutman Defendants disclosed that they were acting as an agent for the property manage company Hilltop Management Group LLC. ("Hilltop"). Consequently, on January 24, 2023, Plaintiff filed, on consent, a First Amended Complaint ("FAC") [DE 35] adding Hilltop as a defendant liable for the state law violations of their agent, the Gutman Defendants.

The following is a summary of Plaintiff's claim. After Jose Crespo agreed to vacate his apartment and a judgment was entered against him in housing court in 2002, his former landlord 1511 Sheridan LLC filed another collection lawsuit against him for the same rental arrears through the debt collection law firm Gutman. Mr. Crespo received no notice of this lawsuit because the lawsuit papers were allegedly served at an address where he did not live and had never lived. Mr. Crespo only learned about the lawsuit over 13 years later, when Defendants used the default judgment to garnish his wages, but by this time Mr. Crespo lived in Buffalo, New York and was unable to travel to New York City to fight the default judgment. Mr. Crespo

eventually lost his job and became homeless, moving back to New York City to sleep on the couches of family and friends and saving his unemployment funds while looking for a new job.

It was at this vulnerable time that Eric Keilbach, a partner at Gutman, restrained Mr. Crespo's bank account containing only his unemployment benefits, which are exempt under the law from restraint and garnishment. When Mr. Crespo called Gutman, he spoke to its collector Gary Thigpen, who misrepresented to Mr. Crespo that the only way he could have his exempt funds released was to sign a Conditional Release forfeiting $1,200 to Gutman. Relying on this misrepresentation and desperate to regain access to his unemployment benefits, Mr. Crespo signed the Conditional Release, but even then Gutman would not release his bank account. Mr. Crespo, with the help of New Economy Project, contacted Gutman to tell them that the funds were being improperly restrained and that the entire account should be released without his having to forfeit the $1,200. Though Gutman, specifically Eric Keilbach, agreed by email to do so, the account remained restrained.

Mr. Crespo therefore filed an Order to Show Cause. Lacking a good faith basis to oppose the Order to Show Cause, Gutman did not appear at the hearing and the court ordered a traverse hearing. Despite its default at the initial hearing on the Order to Show Cause, Gutman appeared at the traverse hearing and requested an adjournment to file opposition papers. Despite requesting and obtaining this adjournment, Gutman ultimately never filed opposition papers, and the court granted Mr. Crespo's Order to Show Cause, vacating the judgment and ordering the return of all the monies taken from Mr. Crespo.

Gutman has a practice of restraining exempt bank funds from consumers and using deceptive conduct to drag out the release of those exempt funds to consumers after being put on notice that the funds are exempt and must be released. This practice is evinced by two other FDCPA cases, *Arias* and *Fadlevich*. In *Arias*, the Gutman Defendants restrained exempt Social Security retirement benefits and then filed a baseless objection to delay their release. In *Fadlevich*, the Gutman Defendants restrained exempt Social Security Disability funds and continued to restrain the funds in various amounts again and again, though the consumer sent four letters putting the Gutman Defendants on notice that the funds were entirely exempt from restraint.

Defendants restrained Mr. Crespo's exempt unemployment benefits, failed to provide him notice of the garnishment, and refused, despite clear and convincing evidence of their wrongdoing, to return the funds. Even now, Defendants still have not returned all of Mr. Crespo's garnished wages.

2. <u>Issue</u>

On February 2, 2023 Plaintiff began the deposition of Defendant Thigpen. Much, if not most, of that time dealt with objections from counsel for the Gutman Defendants, his instructions for Defendant Thigpen not to answer questions, and the Gutman Defendants' decision to cease the deposition to file a protective order. As they state in their Motion [DE 40, pp. 3, 4] with citation to the deposition transcript [DE 40-1] the Gutman Defendants instructed Defendant Thigpen not to answer the following questions:

Q: About how many accounts does Gutman Mintz have for collection? (p. 23, ln. 6 – 7).

Q: About how many accounts are you working with on a daily basis? (p. 25, ln. 12 - 13).

Q: … with the accounts that you are collecting on, about what percent of those would be

accounts that have been reduced to a judgment? (p. 34, ln. 14 - 16).

Q: … about how many bank restrains do you send out per year? (p. 35, ln. 6 - 7).

Q: … about how many conditional releases do you send now per year? (p. 35, ln 11 - 12).

Q: And when you receive money from a consumer about how much of that goes to Gutman, Mintz? (p. 36, ln. 10 - 11).

Q: And what collection software do you use at Gutman Mintz? (p. 36, ln. 18 - 19).

Q: … [a]nd do you use mail merge for sending out information, subpoenas and bank restraints? (p. 36, ln. 22 - 23).

Q: And if a judgment against a consumer is vacated and your ordered to return money to the consumer, how does that process work? (p. 36, ln. 3-5).

Given the impasse during the deposition the parties called Chambers to attempt to get a ruling on the Gutman Mintz Defendants' oral application for a protective order pursuant to Fed.R.Civ.P. 30(d)(3), but unfortunately the Court was not available. Therefore, the deposition was adjourned for the Gutman Defendants to make a Rule 30(d)(3) motion.

3. **Legal standard**

Deposition questions, as tools of discovery, may be asked "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see Weinrib v. Winthrop-University Hospital*, CV 14-953 (JFB)(AKT), 2016 WL 1122033 (E.D.N.Y. March 22, 2016).

Oral depositions are governed by Fed.R.Civ.P. 30. "Although objections to questions posed during a deposition are permitted, 'the examination still proceeds; the testimony is taken subject to any objection.'" *Kelley v. City of Hamden*, No. 3:15CV00977(AWT)(SALM), 2016 WL 5348568, at *2 (D. Conn. Sept. 23, 2016) quoting Fed. R. Civ. P. 30(c)(2). Pursuant to Fed. R. Civ. P. 30(c)(2), "[a] deponent may only refuse to testify under three circumstances: to preserve a privilege; to enforce a Court ordered limitation; or to present a motion under Rule 30(d)(3)." *Id*.

"To obtain a protective order under Rule 30(d)[(3)], the moving party has the burden of proving that the examination was being conducted in bad faith or in such a manner as to unreasonably annoy, embarrass, or oppress the deponent or a party." *In re Omeprazole Patent Litig.*, No. M-21-81(BSJ), 2005 WL 818821, at *2 (S.D.N.Y. Feb. 18, 2005), *aff'd*, 227 F.R.D. 227 (S.D.N.Y. 2005). The alleged relevance of the questions is only applicable where the questions are "so far afield as to cause unreasonable annoyance, embarrassment or oppression." *Mirlis v. Greer*, 249 F. Supp. 3d 611 (D. Conn. 2017).

4. **Gutman Defendants' application provides no legal authority supporting their requested protective order.**

Gutman Defendants appear to want to establish their own standard to deposition objections bereft authority. Specifically, they want a Protective Order limiting questions to:

[Thigpen's] interactions and/or communications with Plaintiff Jose Crespo, and any further involvement, if any, that he had as an employee of Gutman regarding the

3

>collection efforts by Gutman concerning Plaintiff Jose Crespo, or the efforts of other Gutman employees that he has personal knowledge as it relates to Plaintiff Jose Crespo.
>
>Motion, DE 40, p. 1, ¶ 1.

The Gutman Defendants cite no authority to support their position that they can abandon the requirement of "proving that the examination was being conducted in bad faith or in such a manner as to unreasonably annoy, embarrass, or oppress the deponent or a party" and instead obtain a protective order solely on the alleged relevance. It is "improper to instruct a witness not to answer a question on the basis of relevancy." *Mirlis v. Rabbi Daniel Greer, & Yeshiva of New Haven, Inc*., 249 F.Supp.3d 611 (D. Conn. 2017) *quoting* James Wm. Moore et al., *Moore's Federal Practice* 130–88 (3d ed. 2016).

Construing the Motion as charitably as possible as akin to the circumstance referenced in *Mirlis* of questions "so far afield as to cause unreasonable annoyance, embarrassment or oppression," Gutman Defendants fail that standard as well. Gutman Defendants argue the questions "which are the subject of the instant motion, bear no reasonable relationship to the allegations asserted against Mr. Thigpen specifically, or the claims for relief asserted against Mr. Thigpen generally." Motion, DE 40, p. 5. Notably Gutman Defendants do not argue that the questions "bear no reasonable relationship to" the claims in Plaintiff's lawsuit, or even to the knowledge of the witness Mr. Thigpen. Even if the questions were not relevant to the claims as to Mr. Thigpen individually, Gutman Defendants do not even attempt to claim that they were irrelevant to Plaintiff's case.

Moreover, the questions were in fact relevant to Plaintiff's case against Mr. Thigpen individually. As explained by Plaintiff's counsel during the deposition:

>MS. CATERINE:  So my -- my major concern is
> 9   just that, you know, we have a GBL 349 claim against
>10   Mr. Thigpen.  So I have to prove that his conduct, as
>11   to Mr. Crespo, was consumer oriented.  And so, to a
>12   certain extent, I think I have to get into what his
>13   practices are at the firm.  And then more generally, I
>14   just want to sort of have a base of information to go
>15   off of.  You know, I want to ask him questions, for
>16   example, about how the collection software at the firm
>17   works before I get into what was being done with
>18   Mr. Crespo's account specifically.
>
> Deposition Transcript, DE 40-2, p. 30:8-18.

A violation of GBL § 349 can be found from a single transaction. *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25, 647 N.E.2d 741, 744 (1995) ("Consumer-oriented conduct does not require a repetition or pattern of deceptive behavior"). However, it is required to show that the acts or practices "have a broader impact on consumers at large" by demonstrating that it could "potentially affect similarly situated consumers." *Id.* Each of Plaintiff's questions sought information relevant to Gutman Defendants' practices of restraining bank accounts, and thus whether Gutman Defendants' conduct towards Mr. Crespo in the restraint of his bank account could affect similarly situated consumers.

Second, to get the same result, the Gutman Defendants make the argument – again unsupported by authority – that, regardless of whether the questions of Defendant Thigpen are relevant that their instructions to not to answer should be upheld because Plaintiff could try to ask those questions of a Fed.R.Civ.P. 30(b)(6) deposition of Mr. Thigpen's firm by making each of those questions a 30(b)(6) topic. The Gutman Defendants would then serve objections to any topics they did not deem relevant. Specifically, the Gutman Defendants argue, or rather speculate:

> Indeed, these questions, (and any similar ones that Plaintiff's counsel would ask), have either been asked because Plaintiff's counsel is concerned that they were not identified in the Rule 30(b)(6) Notice served upon Gutman,[7] and counsel was hoping to slip these questions in through in Mr. Thigpen's deposition, or Plaintiff's counsel was attempting to back-door her way into improper disclosure of pattern and practice discovery.
>
> > Fn. 7. Had Plaintiff's counsel identified the topics covered by the questions at issue in this Motion in Plaintiff's Rule 30(b)(6) Notice, Gutman would have moved for a Protective Order.
>
> Motion, DE 50 p. 5 and fn. 7

Gutman Defendants essentially want to reverse the normal standard of a broad scope of deposition testimony in general to the claims and defenses of Plaintiff's case and instead make Plaintiff obtain approval for each line of questioning from Gutman Defendants as they waste the parties' time with more baseless motions to obtain protective orders to prevent questions seeking relevant information. It is naked gamesmanship to not only have Plaintiff preview his deposition strategy to Defendants but further obtain approval for it or risk having to respond to another motion. Standard party depositions are turned into a war of attrition by Gutman Defendants to run up costs and fees, for which they will then inevitably lay the blame at the feet of the Plaintiff.s

Plaintiff is not attempting to ask Mr. Thigpen about his individual tax returns (*e.g. Xiao Hong Zheng v. Perfect Team Corp.,* 739 F. App'x 658 (2d Cir. 2018)) or his immigration status (*e.g. Avila-Blum v. Casa de Cambio Delgado, Inc.,* 236 F.R.D. 190 (S.D.N.Y. 2006)) or any such similar questions that "unreasonably annoy, embarrass, or oppress the deponent." Plaintiff is trying to ask Mr. Thigpen for information needed to prove his case against Mr. Thigpen and his co-defendants. Plaintiff is trying to ask Mr. Thigpen about how his debt collection firm does debt collection in a FDCPA case. As such, Gutman Defendants's Motion must be denied in full.

Respectfully,
/s/
Ahmad Keshavarz, Esq.
*Attorney for Plaintiff*

5