### Page 1

```
 1         UNITED STATES DISTRICT COURT
 2         SOUTHERN DISTRICT OF NEW YORK
 3    -------------------------------------------
 4    JOSE CRESPO,
 5              Plaintiff,
 6         vs.                No. 1:22-CV-6599-JPO
 7    GUTMAN, MINTZ, BAKER & SONNENFELDT, LLP;
      GARY THIGPEN, ERIC KEILBACH, 1511 SHERIDAN,
 8    LLC AND HILLTOP MANAGEMENT GROUP, LLC,
 9              Defendants.
10    -------------------------------------------
11
12
13
          VIDEOCONFERENCE DEPOSITION of GARY DONNELL THIGPEN,
14
      taken on Thursday, February 2, 2023, at 10:29 a.m., at
15
      New Hyde Park, New York, before Sophian Defrance, Digital
16
      Reporter and Notary Public of the State of New York.
17
18
19
20
21
22
23
24
25
```

### Page 2

```
 1              APPEARANCES OF COUNSEL
 2    On behalf of Plaintiff, Jose Crespo:
 3         EMMA CATERINE, ESQ.
           AHMAD KESHAVARZ, ESQ.
 4         LAW OFFICES OF AHMAD KESHAVARZ
           16 Court Street
 5         #2600
           Brooklyn, New York 11241
 6         718-522-7900
           emma@newyorkconsumerattorney.com
 7         ahmad@newyorkconsumerattorney.com
           APPEARED VIA VIDEOCONFERENCE
 8
           SUSAN SHIN, ESQ.
 9         ELENA RODRIGUEZ, ESQ.
           NEW ECONOMY PROJECT
10         121 West 27th Street
           New York, New York 10001
11         212-680-5100
           susan@neweconomynyc.com
12         elena@neweconomynyc.com
           APPEARED VIA VIDEOCONFERENCE
13
14    On behalf of Defendants, Gutman, Mintz, Baker & Sonnenfeldt,
      LLP; Gary Thigpen, Eric Keilbach, 1511 Sheridan, LLC and
15    Hilltop Management Group, LLC:
16         KENNETH A. NOVIKOFF, ESQ.
           RIVKIN RADLER
17         926 RXR Plaza
           Uniondale, New York 11556
18         516-357-3000
           ken.novikoff@rivkin.com
19         APPEARED VIA VIDEOCONFERENCE
20
21
22
23
24
25
```

### Page 3

```
 1              INDEX OF EXAMINATION
 2    EXAMINATION                                        PAGE
 3    Stipulations                                        4
 4    Direct Examination by Ms. Caterine                  6
 5    Certificate of Digital Reporter                    42
 6    Certificate of Transcriptionist                    43
 7    Deposition Errata Sheet                            44
 8
 9
10
11
12
13
14
15
16      (There were no exhibits identified during this
17    proceeding.)
18
19
20
21
22
23
24
25
```

### Page 4

```
 1         IT IS HEREBY STIPULATED AND AGREED,
 2    by and between counsel for the respective
 3    parties hereto, that the filing, sealing
 4    and certification of the within deposition
 5    shall be and the same are hereby waived;
 6         IT IS FURTHER STIPULATED AND AGREED
 7    that all objections, except as to the form
 8    of the question, shall be reserved to the
 9    time of the trial;
10         IT IS FURTHER STIPULATED AND AGREED
11    that the within deposition may be signed
12    before any Notary Public with the same
13    force and effect as if signed and sworn to
14    before the Court.
15
```



Page 5
1    G. Thigpen
2    THE REPORTER: We are now on the record, and
3 the time is 10:29 a.m. Eastern Standard Time on
4 February 2nd, 2023, to take the deposition of Mr. Gary
5 Thigpen in the case of Jose Crespo versus Gutman,
6 Mintz, Baker, & Sonn -- Sonnenfeldt, LLP, Gary Thigpen,
7 Eric Keilbach -- Keilbach, 1511 Sheridan, LLC, and
8 Hilltop Management Group, LLC. My name is Sophian
9 Defrance, Notary Public and Digital Reporter assigned
10 for -- assigned for Esquire Deposition Solutions in the
11 State of New York.
12    The witness is located in Summerville, South
13 Carolina, and has confirmed his identity with driver's
14 license issued by the State of South Carolina. The
15 witness is located in Summerville, South Carolina, and
16 does not have local -- and does not have local
17 authority present to administer the oath to them. In
18 lieu of me administering the oath to the witness, I
19 would ask that all parties to stipulate that the
20 witness has identified himself as Mr. Gary Thigpen, and
21 his testimony will be treated as if given under oath.
22    Counsel, can you please verbalize your
23 agreement to this stipulation.
24    MS. CATERINE: This is Emma Caterine, Law
25 Offices of Ahmad Keshavarz, for the plaintiff, Jose

Page 6
1    G. Thigpen
2 Crespo, and I so stipulate.
3    MR. NOVIKOFF: This is Ken Novikoff, counsel
4 for Mr. Thigpen, and I so stipulate.
5    THE REPORTER: Great.
6    MR. KESHAVARZ: I don't think you need me
7 because my firm has already stipulated, but I'm Ahmad
8 Keshavarz.
9    THE REPORTER: Yes.
10    MR. KESHAVARZ: Whatever Emma says, I agree
11 with.
12    THE REPORTER: You got it. Thank you. I'm
13 sorry. I just received an e-mail. Hope you didn't
14 hear that.
15    Mr. Thigpen, will you please raise your right
16 hand.
17    GARY DONNELL THIGPEN,
18 having been first duly sworn, testified as follows:
19    THE REPORTER: Thank you. Counsel, you may
20 now proceed.
21    MR. NOVIKOFF: Emma, before you go. Regular
22 stips?
23    MS. CATERINE: Yes. That's fine.
24    MR. NOVIKOFF: Okay. Great. Thank you.
25    DIRECT EXAMINATION

Page 7
1    G. Thigpen
2 BY MS. CATERINE:
3    Q. All right. Mr. Thigpen, what is your address?
4    A. 428 Cool Bend Lane, Summerville, South
5 Carolina 29486.
6    Q. And what is your full legal name?
7    A. Gary D. Thigpen.
8    Q. And what does the D stand for?
9    A. Donnell, D-O-N-N-E-L-L.
10    Q. And have you ever gone by any other names or
11 aliases?
12    A. No.
13    Q. If I ask you a question and you don't ask me
14 to rephrase the question, is it reasonable for me to
15 assume you understood the question?
16    MR. NOVIKOFF: Note my objection.
17    You can answer, Gary. You can answer that
18 question.
19    THE WITNESS: What was the question again,
20 Counsel?
21 BY MS. CATERINE:
22    Q. If I ask you a question and you don't ask me
23 to rephrase the question, is it reasonable for me to
24 assume you understood the question?
25    A. No. I might ask you to rephrase it again.

Page 8
1    G. Thigpen
2    Q. Fair enough. And throughout this deposition,
3 your counsel may make objections, as he just did;
4 however, unless he instructs you otherwise, will you
5 please answer the question?
6    A. Yes.
7    Q. Have you ever been deposed before?
8    A. No.
9    Q. Have you ever testified in a trial before?
10    A. No.
11    Q. If you have any questions about any
12 terminology I am using, will you please ask me to
13 rephrase the question?
14    A. Yes.
15    Q. What is the source of your knowledge as to
16 Gutman, Mintz, Baker & Sonnenfeldt's attempts to
17 collect the debt from Jose Crespo?
18    MR. NOVIKOFF: Objection to the form of the
19 question.
20    THE WITNESS: What is my source?
21 BY MS. CATERINE:
22    Q. Yes. How do you know what you know about the
23 attempts to collect the debt from Mr. Crespo?
24    A. Only --
25    MR. NOVIKOFF: Wait, wait. Hold on -- hold

Page 9

1      G. Thigpen
2  on, Gary.  Objection.
3        You can answer.
4        THE WITNESS:  Only from my notes in the file.
5  BY MS. CATERINE:
6    Q.  So you don't have any -- any personal memory
7  from it?  It's just from reviewing the documents?
8        MR. NOVIKOFF:  Objection.
9        THE WITNESS:  I can answer that?
10       MR. NOVIKOFF:  Yes.
11       THE WITNESS:  Yeah.  Just from my personal --
12 from my notes in the file.  I can't really -- I refer
13 to what -- what my notes say.
14 BY MS. CATERINE:
15   Q.  Okay.  At any point during this deposition, if
16 you need to take a break to use the restroom or get a
17 drink of water or if you want to take a lunch break at
18 any point, will you please let me know?
19   A.  Yes.
20   Q.  And who have you communicated with about the
21 allegations in this lawsuit?
22   A.  My attorney.
23   Q.  And when you say your attorney, are you
24 referring to Ken Novikoff?
25   A.  Yes.

Page 10

1      G. Thigpen
2    Q.  Have you spoken with anyone else besides
3  Mr. Novikoff about the allegations of this lawsuit?
4    A.  No.
5    Q.  And you spoke with Mr. Crespo directly over
6  the phone, correct?
7    A.  Yes.
8    Q.  Did anyone else at the firm speak with
9  Mr. Crespo at any time?
10       MR. NOVIKOFF:  Note my objection.
11       You can -- you can answer, to the extent you
12 know.
13       THE WITNESS:  You've got to refer -- the other
14 people that could have spoken to him, I -- I would have
15 to look at the system to tell.  I don't know.
16 BY MS. CATERINE:
17   Q.  Okay.  What steps did you take to prepare for
18 your deposition today?
19   A.  I just speak with my attorney about the --
20 that's -- that's the only steps that I take.
21   Q.  Did you review any documents?
22       MR. NOVIKOFF:  I'm going to object on this,
23 Emma.  I think the question that would be appropriate
24 if you say have he -- has he reviewed any documents
25 that hasn't been sent to him by counsel.  Anything I

Page 11

1      G. Thigpen
2  sent to him, I think, is privileged, as -- as it goes
3  into my thought process and my mental process.
4        THE WITNESS:  Do I have to answer her?
5        MR. NOVIKOFF:  No, unless you want -- I mean,
6  unless you want to rephrase that question.
7        MS. CATERINE:  No, that's all right.
8        MR. KESHAVARZ:  I'm sorry.  Was the question
9  is whether you reviewed or what documents did you
10 review?  I'm sorry.  That was my thought.
11       MR. NOVIKOFF:  And, Emma -- I would -- I would
12 respectfully say that, let's just have Emma be the
13 one --
14       MR. KESHAVARZ:  Okay.  I'll -- I'll just ask
15 the court reporter to read back the question about it.
16       MR. NOVIKOFF:  Again, let's -- let's have Emma
17 do it.  I don't want to be double and triple teams
18 here.  She's taking the deposition.  Let her -- let
19 Emma do whatever she needs to be done.  But the
20 question was, what documents, not whether.
21 BY MS. CATERINE:
22   Q.  Did you review any documents in preparation
23 for your deposition today?
24   A.  I spoke with my attorney about documents, yes.
25 Reviewing the documents, yes.

Page 12

1      G. Thigpen
2    Q.  Okay.  And did you go to college, Mr. Thigpen?
3    A.  Yes.
4    Q.  And where did you go to college?
5    A.  CCNY.
6    Q.  I'm also a CUNY alumni, so I appreciate that.
7  And did you have any schooling after CCNY?
8        MR. NOVIKOFF:  Objection.
9  BY MS. CATERINE:
10   Q.  Like graduate school or law school, anything
11 like that?
12       MR. NOVIKOFF:  Same objection.
13       THE WITNESS:  No.  I'm not an attorney.
14 BY MS. CATERINE:
15   Q.  And how long have you been working in the
16 collection industry?
17       MR. NOVIKOFF:  Note my objection.
18       You can answer.
19       THE WITNESS:  About 30 years.
20 BY MS. CATERINE:
21   Q.  And what was your first job in collections?
22       MR. NOVIKOFF:  Again, note my objection.
23       THE WITNESS:  I worked for Hayt, Hayt, &
24 Landau.  That was okay to answer that, Ken?
25       MR. NOVIKOFF:  Yeah.  Unless I tell you not to

Page 13
1          G. Thigpen
2  answer, you answer everything.
3          THE REPORTER:  I'm sorry.  Can you just
4  repeat, you worked for AA?
5          THE WITNESS:  I worked for Hayt, Hayt, &
6  Landau attorneys at 600 Northern Boulevard in Great
7  Neck.
8          THE REPORTER:  Thank you.
9  BY MS. CATERINE:
10     Q.  And what were you doing there?
11     A.  Student loan collection.
12     Q.  And when did you start that job?
13     A.  1986.
14     Q.  And how long did you work there?
15     A.  19 years.
16     Q.  And what did you do after you worked there?
17     A.  Started working for Gutman and Mintz, 2007.
18     Q.  And what was your job when you started working
19  at Gutman Mintz?
20     A.  I'm an account representative, same job.
21     Q.  And what are your daily responsibilities at
22  the firm as an account representative?
23         MR. NOVIKOFF:  Note my objection.
24         You can answer.
25         THE WITNESS:  You know, I -- I answer incoming

Page 14
1          G. Thigpen
2  phone calls, I speak with sheriff's, marshals, I issue
3  income executions and restraining notices, speak with
4  banks, I review files and work -- I work the judgments.
5  BY MS. CATERINE:
6      Q.  And what is your general work schedule?
7      A.  9:00 to 5:00.
8      Q.  Monday through Friday?
9      A.  Yes.
10     Q.  And what type of accounts are you collecting
11  on at Gutman Mintz?
12         MR. NOVIKOFF:  Objection.
13         THE WITNESS:  Judgment accounts.  Some of them
14  counsel before judgments.
15  BY MS. CATERINE:
16     Q.  And they're primarily debts arising from
17  rental arrears, correct?
18     A.  Yes.
19     Q.  How many employees are there at Gutman Mintz?
20         MR. NOVIKOFF:  Note -- note my objection.
21  Again, I'm trying not to make speaking objections,
22  Emma, but I'm not sure that this witness is capable of
23  answering that question.  But go ahead.
24         MS. CATERINE:  If he knows, he knows.
25         THE WITNESS:  I really don't know.  I would

Page 15
1          G. Thigpen
2  say 80 to 150.
3  BY MS. CATERINE:
4      Q.  Okay.  Is -- is Gutman Mintz divided into,
5  like, departments or units or anything like that,
6  divisions?
7          MR. NOVIKOFF:  Note my objection to the
8  question.
9          And don't guess.  Only if you know,
10  Mr. Thigpen.
11         THE WITNESS:  There are different departments.
12  Yes.
13  BY MS. CATERINE:
14     Q.  And what's the department that you work under?
15     A.  The Collection Department.
16     Q.  And what other departments are you aware of?
17         MR. NOVIKOFF:  Note my objection.
18         THE WITNESS:  The Bookkeeping Department, Mail
19  Department.
20  BY MS. CATERINE:
21     Q.  And did Gutman Mintz lay off any employees due
22  to the COVID-19 pandemic?
23         MR. NOVIKOFF:  Objection.
24         Go ahead.  Yeah.  If you can, answer the
25  question, to the extent you have any knowledge.

Page 16
1          G. Thigpen
2          THE WITNESS:  Yes.
3  BY MS. CATERINE:
4      Q.  Do you know how many?
5      A.  No.
6          MR. NOVIKOFF:  Objection.
7  BY MS. CATERINE:
8      Q.  Did COVID-19 alter how the firm operated?
9          MR. NOVIKOFF:  Objection.
10         THE WITNESS:  I'm not -- I'm not involved with
11  the firm's operations.
12  BY MS. CATERINE:
13     Q.  Well, just -- let's -- let's just start -- oh,
14  sorry.
15     A.  I don't do business for the firm.  I'm not
16  involved with the firm's operations.
17     Q.  Sure.  Let -- let's just go with -- with your
18  job and your department, did the way that your
19  department work or the way that you work change during
20  COVID-19?
21         MR. NOVIKOFF:  Objection.
22         THE WITNESS:  I don't understand what you mean
23  by change.
24  BY MS. CATERINE:
25     Q.  Okay.  Let's -- let's just go through some



Page 17
1        G. Thigpen
2  specifics one at a time.  Were you working remotely at
3  any point due to the COVID-19 pandemic?
4        MR. NOVIKOFF:  Objection.
5        THE WITNESS:  Yes.
6  BY MS. CATERINE:
7     Q.  And when did you start working remotely?
8     A.  I wouldn't have the -- I can't really
9  remember.  I was -- I would maybe say April of 2020.
10 Maybe April of 2020.
11    Q.  Okay.  And are you still working remotely
12 today?
13    A.  Yes.
14       MR. NOVIKOFF:  Emma, we just need to stop for
15 two minutes.  Mr. Keilbach wants to come in, so --
16       MS. CATERINE:  Yeah.  That -- that's fine.
17       MR. NOVIKOFF:  I just -- I just need to tell
18 him he -- I sent him the e-mail, so...
19       MS. CATERINE:  Okay.  That's fine.
20       MR. NOVIKOFF:  No, let's continue again.
21 We'll give -- we'll give him a few minutes to jump in,
22 but let's go on.
23       MS. CATERINE:  Okay.  Where was I?
24       THE REPORTER:  You're working remotely.
25       MS. CATERINE:  Thank you.

Page 18
1        G. Thigpen
2        THE REPORTER:  You're welcome.
3  BY MS. CATERINE:
4     Q.  So, Mr. Thigpen -- I'm -- I'm sorry.  Did you
5  answer the question of are -- are you -- are you still
6  working remotely today?
7     A.  Yes.
8     Q.  And is that from Summerville, South Carolina?
9     A.  Yes.
10    Q.  And do you have remote access to the servers
11 or computer system at Gutman Mitz?
12       MR. NOVIKOFF:  Objection.
13       THE WITNESS:  Yes.
14 BY MS. CATERINE:
15    Q.  And -- and how does that work?  Is that, like,
16 a program like LogMeIn or how does that work exactly?
17       MR. NOVIKOFF:  Note my objection.
18       THE WITNESS:  Yes.  It's a program that, yes,
19 that this -- the firm set up for my -- on my laptop.
20 BY MS. CATERINE:
21    Q.  And does that give you access to all of the
22 account notes and files that the firm has regarding
23 consumers?
24       MR. NOVIKOFF:  Objection.
25       THE WITNESS:  No, not all.  Just -- just what

Page 19
1        G. Thigpen
2  I'm allowed to look at.
3  BY MS. CATERINE:
4     Q.  I see.  And what are you allowed to look at in
5  terms of consumers' files?
6     A.  The -- the cases that are in collection, the
7  judgments, the notes, the files on the judgments, and
8  the cases that are loaded, the new cases that come in
9  from the client.  Those also.
10    Q.  And how many attorneys are there at Gutman
11 Mintz?
12       MR. NOVIKOFF:  Objection.
13       THE WITNESS:  Also, there's a lot.  I -- I
14 don't know exactly how many -- the number.
15 BY MS. CATERINE:
16    Q.  Okay.  And you mentioned that you're involved
17 with bank restraints and information subpoenas,
18 correct?
19    A.  Yes.
20    Q.  Do you oversee all information subpoenas and
21 bank restraints?
22       MR. NOVIKOFF:  Objection.
23       THE WITNESS:  No.
24 BY MS. CATERINE:
25    Q.  So are you assigned certain accounts to issue

Page 20
1        G. Thigpen
2  the bank restraints and information subpoenas for?
3        MR. NOVIKOFF:  Objection.
4        THE WITNESS:  Yes.  I'm assigned certain
5  accounts.
6  BY MS. CATERINE:
7     Q.  And -- and who assigns those accounts to you?
8     A.  Eric Keilbach.
9     Q.  Is Eric Keilbach your supervisor?
10    A.  He's the -- he's an -- a partner with the firm
11 that I work closely with.
12    Q.  Do you have a supervisor besides Mr. Keilbach?
13    A.  Yes.  Robert Bruss.
14    Q.  And you said Bruss?
15    A.  Yes.
16    Q.  And what's Mr. Bruss's title at the firm?
17    A.  He's -- he's in -- he's in charge of the
18 collection department.
19    Q.  And is Mr. Bruss an attorney?
20    A.  No.  He's the supervisor that -- he's the
21 supervisor.
22    Q.  And how long have you been working with
23 Mr. Bruss?
24    A.  For my entire time at the firm.
25    Q.  And has he been the head of the Collections



Page 21

1    G. Thigpen
2  Department your entire time at the firm?
3        MR. NOVIKOFF:  Objection.
4        THE WITNESS:  Yes.
5  BY MS. CATERINE:
6     Q.  And do you supervise any employees?
7     A.  No.
8     Q.  Are you a salaried employee?
9     A.  Yes.
10    Q.  Is any of your compensation based on
11 contingency?
12    A.  No.
13    Q.  Do you receive any incentive-based bonuses?
14       MR. NOVIKOFF:  Objection.
15       THE WITNESS:  Just Christmas bonus.  That's
16 it.
17 BY MS. CATERINE:
18    Q.  And is that Christmas bonus based on any
19 performance metrics or anything like that?
20       MR. NOVIKOFF:  Objection.
21       THE WITNESS:  No.
22 BY MS. CATERINE:
23    Q.  Who is Brian Chiantella?
24    A.  He -- Brian, he works with us in the
25 collection area.  He's -- he's a manager now, he's one

Page 22

1    G. Thigpen
2  of the managers.
3     Q.  And who is Michael Roberts?
4     A.  He's an account representative.
5     Q.  And who is Charles J. Cooper?
6     A.  He's a former employee, I think.  Charles
7  Cooper worked for us years ago.
8     Q.  And do you know when he stopped working at
9  Gutman?
10    A.  No.
11    Q.  Do you know if he was fired?
12       MR. NOVIKOFF:  Objection.
13       THE WITNESS:  I can't remember whether -- I
14 can't remember that.
15 BY MS. CATERINE:
16    Q.  And I apologize if I'm mispronouncing this,
17 but who is Hotan Rohparvar?
18    A.  He's a partner with the firm.
19    Q.  And who is Angelo Ficarrotta?
20    A.  I think he's another partner with the firm.
21    Q.  And who is Young Yu?
22    A.  Another -- another partner with the firm.
23    Q.  And who is Gloria Coker?
24    A.  She works at the firm.  She -- she loads the
25 new cases in the collection area.

Page 23

1    G. Thigpen
2     Q.  And what do you mean by loads -- loads the new
3  cases in the collection area?
4     A.  The new files from clients are sent to Gloria.
5  She -- she inputs the information on our computers.
6     Q.  About how many accounts does Gutman Mintz have
7  for collection?
8        MR. NOVIKOFF:  Okay.  I'm going to object now.
9  And I want to make a Rule 30(d)(3) motion.  He is not
10 here as a 30(b)(6) witness.  He's here to discuss his
11 involvement with Mr. Crespo.  I've given latitude in
12 terms of your questioning, which I think has absolutely
13 nothing to do with Mr. Crespo.
14       So you've -- you -- if you -- if you choose
15 to, that's something you may want to talk with
16 Mr. Keilbach about if you've identified that as a topic
17 for a 30(b)(6) deposition, but I'm not -- we can talk
18 to the judge now.  We can mark this for a ruling and go
19 back after the deposition.  It's entirely up to you,
20 but --
21       MS. CATERINE:  Well, I mean --
22       MR. NOVIKOFF:  No.  Emma, this is -- this is,
23 you know, this is not a 30(b)(6).  You're -- this is
24 far afield now from what he did with Mr. Crespo and why
25 he's a named plaintiff in this -- or named defendant in

Page 24

1    G. Thigpen
2  this action.
3        MS. CATERINE:  I just don't understand.  If
4  he -- if he knows, he knows.  If he doesn't know, he
5  doesn't know.
6        MR. NOVIKOFF:  You're -- you're digging for
7  information concerning the practice of Gutman Mintz.
8  You've identified Mr. Keilbach as a 30(b)(6) witness.
9  I don't have the list of topics that you've identified
10 in the notice.  If this is one of them, you could ask
11 Mr. Keilbach about it.
12       But this witness is not going to be here to
13 talk about the practices of Gutman Mintz.  He's here to
14 talk about his involvement with Mr. Crespo and the
15 allegations that you have made against him with regard
16 to Mr. Crespo 's claim.
17       Again, we can -- we can get the judge on the
18 phone now if you have his number, we can mark this for
19 a ruling and we can address it afterward.  And if
20 Mr. Thigpen has to come back, then he will.  That's not
21 a problem.  But this is not going to be a 30(b)(6)
22 deposition through Mr. Thigpen.
23       MS. CATERINE:  Okay.  Well, let's just set
24 aside this issue --
25       MR. NOVIKOFF:  Sure.  Absolutely.



Page 25

1  G. Thigpen
2  MS. CATERINE: -- for now. I make all
3 reservation --
4  MR. NOVIKOFF: Absolutely.
5  MS. CATERINE: -- et cetera.
6  MR. NOVIKOFF: Okay.
7  MS. CATERINE: We'll see if this -- how much
8 more of this I can get through, if it's an issue or
9 not.
10  MR. NOVIKOFF: Okay.
11 BY MS. CATERINE:
12  Q. Mr. Thigpen, about how many accounts are you
13 working with on a daily basis?
14  MR. NOVIKOFF: Note my objection. Same --
15 same motion.
16  MS. CATERINE: All right. We're going to have
17 to get the judge on the phone, then.
18  MR. NOVIKOFF: Okay.
19  MS. CATERINE: Do we have a magistrate judge
20 assigned for this case? I don't recall.
21  MR. NOVIKOFF: Well, I was just -- we can go
22 off the record for a second.
23  MR. KESHAVARZ: Yeah, let's go off the record.
24  MS. CATERINE: Okay. Sorry.
25  THE REPORTER: The time is 10:59 a.m. Eastern

Page 26

1  G. Thigpen
2 Standard Time. And with no objections, we are now off
3 the record.
4  (An off-the-record discussion was had.)
5  THE REPORTER: The time is 11:07 a.m. Eastern
6 Standard Time. We are now back on the record.
7  MS. CATERINE: Good morning. Good morning.
8 This is Emma Caterine with the Law Offices of Ahmad
9 Keshavarz. We are in the middle of a deposition right
10 now and need a ruling from Judge Oetken.
11  UNIDENTIFIED SPEAKER: Got it. What's the
12 case number?
13  MS. CATERINE: The case number is
14 1:22-CV-06599.
15  UNIDENTIFIED SPEAKER: Okay. Well, Judge
16 Oetken is not available at the moment. So I can either
17 take an update, leave a message for the clerk on the
18 case. What would you prefer?
19  MS. CATERINE: Yeah. If -- if we could leave
20 a message. And I guess, Ken, if you want to give a
21 brief summary of what your application is.
22  MR. NOVIKOFF: I am making a rule 30(d)(3)(a)
23 motion to -- concerning lines -- a certain line of
24 questioning at my client's deposition.
25  UNIDENTIFIED SPEAKER: And what's your name,

Page 27

1  G. Thigpen
2 sir?
3  MR. NOVIKOFF: My name is Ken, K-E-N,
4 Novikoff, N-O-V-I-K-O-F-F. And I am representing
5 Defendant Thigpen, Gary Thigpen, in his deposition
6 today.
7  UNIDENTIFIED SPEAKER: Got it. Okay. Well,
8 I'll forward your message, then.
9  MR. NOVIKOFF: Thank you very much.
10  MS. CATERINE: Thank you.
11  UNIDENTIFIED SPEAKER: I'm not sure if you'll
12 get a call back, but what is the call-back number in
13 case?
14  MR. KESHAVARZ: You can call me back, if it's
15 okay, (347) 308-4859. And I don't know, Ms. Caterine,
16 if you want to put the question that's at dispute on
17 the record or not.
18  MR. NOVIKOFF: There were two questions.
19  MS. CATERINE: We can just wait. We can just
20 wait.
21  MR. NOVIKOFF: Yeah. I think it's best to
22 wait.
23  UNIDENTIFIED SPEAKER: All right. I'll convey
24 your message to the judge and the clerk on the case
25 and -- yeah. I'm not sure what will happen. But let

Page 28

1  G. Thigpen
2 me know that.
3  MR. NOVIKOFF: Thank you.
4  MS. CATERINE: Okay. Thank you.
5  MR. KESHAVARZ: Okay.
6  MR. NOVIKOFF: Emma, how do you want to
7 proceed? It's up to you. It's completely up to you.
8  MS. CATERINE: I -- I guess I'll just -- we'll
9 see which -- which questions here step over the line
10 for you. I'm not quite sure.
11  THE REPORTER: It was -- it was about how many
12 accounts are you working on a daily basis?
13  MR. NOVIKOFF: And the prior question was more
14 general to Gutman Mintz.
15  THE REPORTER: Yeah. There was one more I
16 have to just look here.
17  MR. NOVIKOFF: There was --
18  THE REPORTER: Yes. About how many -- so the
19 first one was, about how many accounts does Gutman and
20 Mintz have for collections. And we got past that one.
21 And then the issue came up about how -- about how many
22 accounts are you working on a daily basis. But let
23 me --
24  MS. CATERINE: Let's just go off the record
25 for a second.



### Page 29

1  G. Thigpen
2  MR. NOVIKOFF: Okay.
3  THE REPORTER: The time is 11:11 a.m. Eastern
4  Standard Time. With no objections, we are now off the
5  record.
6  (An off-the-record discussion was had.)
7  THE REPORTER: The time is 11:35 a.m. Eastern
8  Standard Time, and we are now on the record.
9  MS. CATERINE: All right. So I -- I think,
10 based on my understanding of -- of what your objection
11 is, I think it might make sense to postpone the
12 deposition and have you file a motion for the
13 protective order.
14 MR. NOVIKOFF: Okay.
15 MS. CATERINE: I just want to make sure that I
16 understand you correctly. So are you -- are you going
17 to object to any line of questioning about what
18 Mr. Crespo's general practices are at the firm?
19 MR. NOVIKOFF: You mean Mr. Thigpen's
20 general --
21 MS. CATERINE: I'm sorry. Mr. Thigpen's
22 practices at the firm.
23 MR. NOVIKOFF: Again, I don't know. I would
24 have to hear the question. I -- and in all candid,
25 there -- there are probably questions after you've

### Page 30

1  G. Thigpen
2  asked him questions about what he did with Crespo
3  that -- that arguably would be appropriate and not
4  deemed by need to be an inquiry into the pattern and
5  practice of the firm and run around 30(b)(6) with
6  Mr. Keilbach. But I won't know that until -- until I
7  hear the question.
8  MS. CATERINE: So my -- my major concern is
9  just that, you know, we have a GBL 349 claim against
10 Mr. Thigpen. So I have to prove that his conduct, as
11 to Mr. Crespo, was consumer oriented. And so, to a
12 certain extent, I think I have to get into what his
13 practices are at the firm. And then more generally, I
14 just want to sort of have a base of information to go
15 off of. You know, I want to ask him questions, for
16 example, about how the collection software at the firm
17 works before I get into what was being done with
18 Mr. Crespo's account specifically.
19 MR. NOVIKOFF: You know, those are probably
20 questions that you should have identified for -- for
21 Mr. Keilbach or for your 30(b)(6) deposition. But as
22 far as whether this is consumer or not, my view is that
23 you could -- you can get all the information you need
24 by asking about Crespo.
25 I mean, you've already asked him whether or

### Page 31

1  G. Thigpen
2  not most of them -- most of the work is -- in terms of
3  what he does is regard to landlord-tenant matters. I
4  don't know the exact words, but I think that's kind of
5  what was the question you asked, and he answered that.
6  Yeah. I -- it's -- again, I'm not going to --
7  I'm not going to be questioned here. I don't mean that
8  insultingly. I'm -- you know, I'm not here to answer
9  the questions, but my view is --
10 MS. CATERINE: No. I understand.
11 MR. NOVIKOFF: -- my view is that you can get
12 all of the information that you arguably need for any
13 30 -- GBL 349 claim or any claim against him in his
14 individual capacity under the FDC by asking him
15 specific questions about Mr. Crespo. And obviously, if
16 a question lends itself -- if an answer lends itself to
17 a question concerning whether what he did was
18 consistent with his practice, then depending on how the
19 question is framed, it might be something that is
20 appropriate and not, in my opinion, bad faith.
21 But, listen, I'm fine if you want to -- if you
22 want to suspend the deposition today. And, in fact,
23 you may get all these answers from Mr. Keilbach when
24 you take his deposition on Wednesday. That all may
25 alleviate, you know, you needing to spend those

### Page 32

1  G. Thigpen
2  questions with Mr. -- with Mr. Thigpen. So I'm fine
3  with you suspending it.
4  I'll make the motion. I would ask the Court
5  Reporter to send me the transcript, the rough
6  transcript, as soon as you can. And I'll make the
7  motion within a week to --
8  MS. CATERINE: Well, so I think that -- that
9  sounds like the right course of action here. I guess
10 one -- one question I have for you is: Would it make
11 sense for me to ask a couple of additional questions
12 just so it's clear what line of questioning you're
13 objecting to?
14 MR. NOVIKOFF: That's your call. It's your --
15 it's your deposition.
16 MS. CATERINE: Because I don't want you to --
17 I -- I don't want it to appear that I'm just, you know,
18 harassing the witness with questions I know you're
19 objecting -- you're going to object to. I just want to
20 understand exactly the scope of what you're objecting
21 to. Do you -- do you understand what I'm saying?
22 MR. NOVIKOFF: Yeah. And again, I -- I,
23 again, I don't know if asking you one or two questions
24 is going to -- to make the difference. I think I've
25 made -- I think I've made it clear that -- that I think



### Page 33

1     G. Thigpen
2  the appropriate way to deal with Mr. Crespo -- with
3  Mr. Thigpen is to ask him the questions about his
4  involvement with -- with Crespo and what his knowledge
5  is about that and what he did.
6     And again, to the extent that, once you lay
7  that foundation, if there are questions that need to be
8  asked about, you know, whether, you know, whether it
9  was consistent with how he normally does things,
10 then -- then -- and if he answers no, arguably, then I
11 guess you could -- you could then go into what he would
12 normally do.
13    But I don't think you'd be -- no disrespect.
14 I don't think you've gone there yet.  And -- and my
15 concern is that you are -- you are really using him for
16 a 30(b)(6) witness deposition when -- when you've
17 already noticed us for that, you've given us the
18 topics, and Mr. Keilbach is -- is going to be prepared
19 on Wednesday to -- to address the topics that you've
20 identified.
21    But I -- I can't tell you how to do, you know,
22 respectfully, I'm -- I'm not trying to fight with you.
23 I just can't --
24    MS. CATERINE:  No, I understand.  So I
25 think -- I think the way that -- that I'm going to

### Page 34

1     G. Thigpen
2  proceed here is I'll ask a few more questions just --
3  just to clarify and then we will suspend the deposition
4  to resume after --
5     MR. NOVIKOFF:  Okay.
6     MS. CATERINE:  -- a decision on your motion.
7     MR. NOVIKOFF:  So when you say a few, you
8  talking two?  You talking ten?  What are we talking
9  about here?
10    MS. CATERINE:  I think probably, like, five.
11    MR. NOVIKOFF:  All right.  Go ahead.  Okay.
12 We're back on, then.
13 BY MS. CATERINE:
14    Q.  All right.  So, Mr. Thigpen, with the accounts
15 that you are collecting on, about what percent of those
16 would be accounts that have been reduced to a judgment?
17    MR. NOVIKOFF:  Note my objection.  Making the
18 same motion.
19 BY MS. CATERINE:
20    Q.  Okay.  And the clients for the accounts that
21 you are collecting on are generally property management
22 companies, correct?
23    MR. NOVIKOFF:  To the extent you know.
24    THE WITNESS:  Yes.
25 BY MS. CATERINE:

### Page 35

1     G. Thigpen
2     Q.  And about how many --
3     MR. NOVIKOFF:  Hold on.  Just note my
4  objection to that question, but he answered it.  Yeah.
5  BY MS. CATERINE:
6     Q.  All right.  And about how many bank restraints
7  do you send out per year?
8     MR. NOVIKOFF:  Note my objection, and I'm
9  making the motion.
10 BY MS. CATERINE:
11    Q.  Okay.  And about how many conditional releases
12 do you send out per year?
13    MR. NOVIKOFF:  Same objection.  Same motion.
14 BY MS. CATERINE:
15    Q.  And in what situation would you send a
16 consumer conditional release?
17    MR. NOVIKOFF:  You can answer that.
18 Objection -- objection to the form.
19    But you can answer that.
20    THE WITNESS:  If -- if the consumer agreed
21 to -- to the conditional release.  I can only send it
22 if they agreed to it.
23 BY MS. CATERINE:
24    Q.  And -- and how would that come up that a
25 consumer would agree to a conditional release?

### Page 36

1     G. Thigpen
2     MR. NOVIKOFF:  Note my objection.
3     But you can answer.
4     THE WITNESS:  By talking, having a
5  conversation with the consumer.
6  BY MS. CATERINE:
7     Q.  And what do you do when a consumer tells you
8  that their bank funds are exempt from restraint?
9     A.  I ask for -- I ask for bank statements.
10    Q.  And when you receive money from a consumer,
11 about how much of that goes to Gutman Mintz?
12    MR. NOVIKOFF:  Note my objection.  Same.  I'm
13 making the motion.
14    THE WITNESS:  I don't know.
15    MR. NOVIKOFF:  No, no, no, no, no.  Don't
16 answer.
17 BY MS. CATERINE:
18    Q.  And what collection software do you use at
19 Gutman Mintz?
20    MR. NOVIKOFF:  My objection.  Same motion.
21 BY MS. CATERINE:
22    Q.  Okay.  And do you use mail merge for sending
23 out information, subpoenas, and bank restraints?
24    MR. NOVIKOFF:  Note my objection.  Same --
25 same motion.



Page 37
1              G. Thigpen
2  BY MS. CATERINE:
3      Q.  And if a judgment against a consumer is
4  vacated and you're ordered to return money to the
5  consumer, how does that process work?
6      MR. NOVIKOFF:  Note my objection to the
7  question.  Hold on.  If you can -- just repeat the
8  question again.
9      MS. CATERINE:  Could you have the question
10 read back, please?
11     MR. NOVIKOFF:  Yeah.
12     (The previous question was played back.)
13     MR. NOVIKOFF:  Note my -- wait.  Yeah.  Note
14 my objection.  I'm going to make the same motion
15 because, again, he should not be speaking about what
16 the practice and policy is of Gutman is with regard to
17 that.  You certainly can ask him about what occurred
18 with Crespo because, again, I don't think, you know,
19 according to everything we've seen, that there was a
20 vacatur of a judgment.
21     So I think if you limit it to Crespo, I have
22 no problem with it.  But if you going to go broadly to
23 what the firm's policies and practices are, one, I
24 don't think you've laid a foundation for it, and two, I
25 just think it's inappropriate for this witness.

Page 38
1              G. Thigpen
2      MS. CATERINE:  Okay.  Then I think at this
3  point, we'll --
4      THE REPORTER:  Okay.
5      MS. CATERINE:  -- suspend the deposition.
6      MR. NOVIKOFF:  Absolutely.  Okay.  And, yes.
7  If -- so, Madam Court Reporter, if you can get me back
8  a rough transcript within the next couple of days.
9  Today is now the 2nd of February.  I will file my
10 motion with the court by next week tomorrow.  So that
11 would be 2-10, I think.
12     MR. KESHAVARZ:  Yeah.  You can't file it
13 before the Keilbach deposition?
14     MR. NOVIKOFF:  I -- I can't.  I can't.  I'm
15 just -- I'm just swamped.
16     THE REPORTER:  To be honest, I'm looking to
17 get this to you by tomorrow.
18     MR. NOVIKOFF:  Right.  Yeah.  So --
19     THE REPORTER:  So you can have -- so you can
20 move along the process, but...
21     MR. NOVIKOFF:  I mean, again, we've talked
22 about Keilbach's deposition for next Wednesday.
23 However you want to do it, you know, if you want to
24 wait until a decision is made, fine.  If you just want
25 to limit Keilbach to Crespo and then come back with the

Page 39
1              G. Thigpen
2  30(b)(6) depending on the ruling, that's fine too.  You
3  know, I'll -- I'll work with you, you know.  Eric's
4  around and so is Mr. Thigpen.  So it's not, you know --
5  the only -- the only issue on scheduling would be my
6  schedule, your schedule, and Emma's schedule.
7      MR. KESHAVARZ:  So you're going to be paying
8  for the transcript.
9      THE REPORTER:  Counsel, we're still on record.
10     MR. NOVIKOFF:  I'm going to be paying for the
11 transcript?
12     MS. CATERINE:  That's fine.
13     MR. KESHAVARZ:  I mean, you're rush delivering
14 it.  I'm not going to pay a rush.
15     MR. NOVIKOFF:  Well, no. I'm -- I'm getting a
16 rough transcript.  You're going to give me a rough,
17 right?  Well, I mean, I'm trying to -- I'm trying to
18 work with you on this, Ahmad.  I mean, I'm not -- I
19 could wait for the regular delivery and make the motion
20 in two weeks.  I'm, you know, but I don't want to do
21 that.  I want this issue resolved and then push the
22 case forward and -- you know, I'm ordering -- I'm
23 ordering -- I am ordering -- I'm asking you, Ms. Court
24 Reporter, to send me a rough transcript when -- by, you
25 know, tomorrow you said you can.  Send me the bill.

Page 40
1              G. Thigpen
2  I'm asking for it.  And obviously I would have to share
3  it with you if I'm going to use it, Ahmad, so I think
4  your question is -- is academic, so...
5      MS. CATERINE:  Okay.
6      MR. NOVIKOFF:  Okay?  Well, thank you very
7  much for your time and your cooperation, Emma.  I'm
8  glad that, as my daughter did with a college essay, we
9  can disagree without being disagreeable.  And we'll be
10 speaking.  All right.
11     Yes, Madam Court Reporter, would you like to
12 say something?
13     THE REPORTER:  I do want to add.  I didn't ask
14 you at the beginning of the proceeding or before, what
15 firm are you with?
16     MR. NOVIKOFF:  I am with Rivkin Radler.
17     THE REPORTER:  Okay.  I saw that, but I just
18 wanted to confirm it because I wasn't sure.  At -- this
19 is 926 RXR Plaza, right?
20     MR. NOVIKOFF:  Yes, it is.
21     THE REPORTER:  Thank you so much.
22     MR. NOVIKOFF:  All right.  Gary, I will -- I
23 will reach out to you at another point in time.  You
24 are under oath, so you and I cannot speak about your
25 deposition testimony between now and when we do.  Do



Page 41
1        G. Thigpen
2  you understand that?
3        THE WITNESS:  Yes.
4        MR. NOVIKOFF:  Okay.
5        MS. CATERINE:  Thank you, Mr. Thigpen.
6        MR. NOVIKOFF:  Thanks again.
7        THE WITNESS:  All right.
8        THE REPORTER:  The time is -- just hold on,
9  Ms. Caterine.
10       MS. CATERINE:  Sorry.  Sorry.  Go ahead.
11       THE REPORTER:  Sure.  The time is 11:51 a.m.
12  Eastern Standard Time.  And with no objections, we are
13  now off the record.
14       (Thereupon, the proceedings were adjourned at
15  11:51 a.m.)
16
17
18
19
20
21
22
23
24
25

Page 42
1        CERTIFICATE OF DIGITAL REPORTER
2
3        I, Sophian Defrance, a Digital Reporter
4  and Notary Public in and for the State of New York,
5  do hereby certify:
6
7        That the foregoing witness was duly
8  sworn; that the proceeding took place before me at
9  the time and place herein set forth; that the
10  testimony and proceedings were accurately captured
11  with annotations by me during the proceeding.
12
13       I further certify that I am not related
14  to any of the parties to this action by blood or
15  marriage and that I am in no way interested in the
16  outcome of this matter.
17
18       IN WITNESS THEREOF, I have hereunto set
19  my hand this 10th day of February 2023.
20       *Sophian Rema Defrance*
21       _____
           Sophian Defrance
22         Notary Commission New York 01DE6396104
           Commission Expires: August 12, 2023
23
24
25

Page 43
1        CERTIFICATE OF TRANSCRIPTIONIST
2
3
4        I, Susan Kemph, Legal Transcriptionist,
5  do hereby certify:
6        That the foregoing is a complete and true
7  transcription of the original digital audio recording
8  of the testimony and proceedings captured in the
9  above-entitled matter.  As the transcriptionist, I
10  have reviewed and transcribed the entirety of the
11  original digital audio recording of the proceeding to
12  ensure a verbatim record to the best of my ability.
13       I further certify that I am neither attorney
14  for nor a relative or employee of any of the parties
15  to the action; further, that I am not a relative or
16  employee of any attorney employed by the parties
17  hereto, nor financially or otherwise interested in the
18  outcome of this matter.
19       IN WITNESS THEREOF, I have hereunto set my
20  hand this 10th day of February 2023.
21
22
23       *Susan Kemph*
           _____
24         Susan Kemph
25

Page 44
1        DEPOSITION ERRATA SHEET
2
3  Assignment No. J9230074
4  Case Caption: JOSE CRESPO vs. GUTMAN, MINTZ, BAKER &
   SONNENFELDT, LLP; GARY THIGPEN, ERIC KEILBACH, 1511
5  SHERIDAN, LLC AND HILLTOP MANAGEMENT GROUP LLC
6
7
8        DECLARATION UNDER PENALTY OF PERJURY
9
10       I declare under penalty of perjury that I have
11  read the entire transcript of my deposition taken in
12  the above-captioned matter or the same has been read
13  to me, and the same is true and accurate, save and
14  except for changes and/or corrections, if any, as
15  indicated by me on the DEPOSITION ERRATA SHEET
16  hereof, with the understanding that I offer these
17  changes as if still under oath.
18
19       Signed on the _____ day of _____,
20  20__.
21
22       _____
23  GARY DONNELL THIGPEN
24
25



Page 45

```
 1   DEPOSITION ERRATA SHEET
 2   Page No._____Line No._____Change to:_____
 3   _____
 4   Reason for change:_____
 5   Page No._____Line No._____Change to:_____
 6   _____
 7   Reason for change:_____
 8   Page No._____Line No._____Change to:_____
 9   _____
10   Reason for change:_____
11   Page No._____Line No._____Change to:_____
12   _____
13   Reason for change:_____
14   Page No._____Line No._____Change to:_____
15   _____
16   Reason for change:_____
17   Page No._____Line No._____Change to:_____
18   _____
19   Reason for change:_____
20   Page No._____Line No._____Change to:_____
21   _____
22   Reason for change:_____
23   SIGNATURE:_____DATE:_____
24            GARY DONNELL THIGPEN
25
```

Page 46

```
 1   DEPOSITION ERRATA SHEET
 2   Page No._____Line No._____Change to:_____
 3   _____
 4   Reason for change:_____
 5   Page No._____Line No._____Change to:_____
 6   _____
 7   Reason for change:_____
 8   Page No._____Line No._____Change to:_____
 9   _____
10   Reason for change:_____
11   Page No._____Line No._____Change to:_____
12   _____
13   Reason for change:_____
14   Page No._____Line No._____Change to:_____
15   _____
16   Reason for change:_____
17   Page No._____Line No._____Change to:_____
18   _____
19   Reason for change:_____
20   Page No._____Line No._____Change to:_____
21   _____
22   Reason for change:_____
23   SIGNATURE:_____DATE:_____
24            GARY DONNELL THIGPEN
25
```

